WILLIAM W. WARREN & another, administrators, *vs.* SOPHRONIA C. GREGG & others.

Suffolk.    November 18. — 19, 1874.    WELLS & DEVENS, JJ., absent.

A testator made the following bequest: " I give and bequeath to my beloved wife, S. C., $1200 annually, from the proceeds of my estate, real and personal, (except what may be hereinafter mentioned as reserve,) as her dower. The said property to be held in trust, and said annuity to be paid to said wife in semi-annual instalments, so long as she remains my widow, and no longer. When such intrusted property shall be distributed as follows, viz.: Reserved, all notes, drafts or evidences of debts due to my estate from each or either of my sons-in-law, shall be held in reserve without interest until a final settlement of my estate, and that the annual income of my estate, (if any,) after reserving the said $1200 as above mentioned, be equally distributed among my heirs annually; and when at a final settlement of my estate, I devise that my remaining estate shall be equally divided among my five daughters." *Held*, that the widow was entitled to receive a clear annual sum of $1200 out of his estate, whether the income of his property, excluding what he directed to be reserved, should be sufficient, or it should become necessary to apply part of the principal for that purpose.

A testator by will authorized his wife to " select or reserve for her own use and occupancy one bed, and suitable bedding for the same, and what other furniture, pictures, or miscellaneous library she may wish to use and occupy." The will further provided: " The rest of my miscellaneous library and furniture to be equally distributed, either by sale or otherwise, among my legal heirs." *Held*, that the wife was authorized to use so much of the furniture of any description and to any extent as she might select.

Oral declarations of a testator are inadmissible to control the construction of his will.

BILL IN EQUITY by the trustees, who were also administrators with the will annexed, of Samuel Gregg, against the widow and

heirs at law of the testator, to obtain the instructions of the court The will of the testator, which was dated October 27, 1871, after declaring that his lawful debts should be paid, provided as follows:

" Second. I give and bequeath to my beloved wife, Sophronia Carter, $1200 annually, from the proceeds of my estate, real and personal, (except what may be hereinafter mentioned as reserve,) as her dower. The said property to be held in trust, and said annuity to be paid to said wife in semi-annual instalments, so long as she remains my widow, and no longer. When such intrusted property shall be distributed as follows, viz. : Reserved, all notes, drafts, or evidences of debts due to my estate from each or either of my sons-in-law, E. G. Tileston, W. R. Stockbridge, Jas. Howard, Jr., J. B. Wooster, or J. W. Dolliver, shall be held in reserve without interest until a final settlement of my estate, and that the annual income of my estate, (if any,) after reserving the said $1200 as above mentioned, be equally distributed among my heirs annually ; and when at a final settlement of my estate, I devise that my remaining estate shall be equally divided among my five daughters, Martha D. Tileston, Caroline A. Stockbridge, Anna S. Howard, Abby T. Wooster, and Josephine M. Dolliver, after the following restrictions and reservations have been made, viz. : The amount of each and all dues to my estate, from each or either of my sons-in-law above named, respectively, shall be deducted from that portion of my estate otherwise allotted to his wife at the final settlement of my estate.

" Third. My wife, Sophronia Carter, may select or reserve for her own use and occupancy as above, one bed, and suitable bedding for the same, and what other furniture, pictures, or miscellaneous library she may wish to use and occupy, as above stated. She may also retain, in fee simple, all her marriage presents ; also, her wardrobe of every description, for herself or her heirs. The rest of my miscellaneous library and furniture to be equally distributed, either by sale or otherwise, among my legal heirs. My desire is that my medical library, and apparatus pertaining to my profession, should be preserved until either of my grandsons, at the age of fifteen years, should choose to study and practise my profession, he shall have and hold, in fee simple, all my medical library and apparatus. Provided he will prepare and

furnish gratuitously, from time to time, to the other members of my family, whatever domestic medicines they may wish to keep for their own use; otherwise such property shall be distributed like the rest."

Annexed to the bill were schedules marked B, C, D, E and F, setting forth the indebtedness of his sons-in-law to the testator at the date of the will which was unpaid at his death; also schedules marked G and H, setting forth notes in the hands of third parties upon which the testator was indorser for the accommodation of his sons-in-law Tileston and Stockbridge. This liability was incurred after the date of the will.

It also appeared that the first named defendant was the second wife of the testator, and that he had had no children by her.

Hearing before *Wells*, J., who ruled that the evidences of indebtedness in schedules marked B, C, D, E and F were intended to be reserved, as provided in the will, until the property was finally distributed, and could not be collected by the administrators; that the notes described in schedules marked G and H were not intended to be " reserved " by the will, and that the administrators should require the same to be paid by the makers thereof. At the hearing, the counsel for the heirs offered to prove that the notes described in the schedules marked G and H were renewals of notes of the same amounts which existed at the time the will was made; but the judge held that such evidence would not affect the ruling as to said notes. The counsel for the heirs also offered to prove, by the declarations of the testator just prior to his decease, that the notes described in schedules G and H were intended by him to be " reserved " under the will, and also declarations of the deceased as to the furniture to be taken for use by his wife; but the evidence was excluded.

The judge also ruled that by the terms of the will the widow had the right to take for her use such furniture of the deceased as she pleased, and that there was no limit imposed by the will upon her selection; and that it was the true intent of the testator, by the will, to give his wife an annual income of twelve hundred dollars as a charge upon both principal and income of his estate. The heirs appealed to the full court.

*I. S. Morse & F. S. Heseltine*, for the heirs. 1. In determining the meaning of language used by the testator in his will, the

circumstances under which he was placed, and the state and condition of his family, are fair matters of inquiry and proof.

2. The declaration of the testator, just prior to his decease, as to the debts to be held in reserve, and as to the distribution of his furniture, should be received in evidence.

3. In giving to his wife $1200 annually "from the proceeds of my estate, real and personal," the testator could not have intended to give her the real or personal estate itself. The word "proceeds" means the "income, rent, receipts, rental" of the estate, real and personal.

4. If the construction contended for be the true one, that there is no limit to the furniture to be taken by the widow, and that she may take the whole, the following language of the will, " The rest of my miscellaneous library and furniture to be equally distributed, either by sale or otherwise, among my legal heirs," becomes of no effect.

5. The fact that the testator left a widow alone, without children or family, leads to the conclusion that when he said "My wife may select and reserve for her own use and occupancy as above, one bed, and suitable bedding for the same, and what other furniture and pictures, or miscellaneous library she may wish to use and occupy," he did not intend that she should take all the furniture and books that he left. He intended to limit her to what she needed for her individual use.

*T. P. Proctor*, for the widow.

GRAY, C. J. Upon a view of all the provisions of this ill drawn and obscure will, we concur in opinion with the justice by whom the cause was heard, that the testator intended that his widow should receive a clear annual sum of $1200 out of his estate, whether the income of his property (excluding what he directed to be reserved) should be sufficient, or it should be necessary to apply part of the principal for that purpose ; and that she should have the right to the use of so much of the furniture of any description as she might select. The oral declarations of the testator are clearly inadmissible to control the construction of his will. *Decree affirmed.*