*J. O. Teele, W. S. Slocum & J. W. Pickering,* for the several defendants.

*C. Cowley, pro se.*

———

### WILLIAM A. RICHARDSON & others, executors, *vs.* JOHN R. HALL, administrator, & others.

Suffolk. March 22, 23, 1877. — March 21, 1878. LORD & SOULE, JJ., absent.

A testator, by his will, gave to his wife, for her life, his homestead estate, with all the household furniture, also an annuity of $12,000 out of the general residue of his estate, which it was declared should take precedence of all other annuities, and not be subject to deduction in case of any failure of his estate. These provisions were in lieu of dower or other interest in the estate. To his only son he gave a life interest in the homestead and furniture, after the death of the testator's wife, also the net income of certain real estate, (after deducting an annuity to the son's wife and to another person,) so far as sufficient to cover all the living and expenditures of the son. By a codicil it was provided that if the net income of the real estate was not sufficient to pay to the son $4500 net, in addition to the sums to be paid to his wife and the third person mentioned, the amount necessary to make it up to that sum should be taken out of the annuity of $12,000 to the testator's wife; and, by a subsequent clause in the same codicil, an annuity of $6000 was given to the son out of the general residue, on the death of the testator's wife. To the testator's wife's sister was given a certain parcel of land for life, an absolute annuity and two additional annuities. These last annuities were revoked by a codicil. By a subsequent codicil it was declared that the provisions in her favor should take precedence of all others, except those in favor of the testator's wife, his son and son's wife. By the next clause in the same codicil, the revoked annuities were restored, on condition that the estate should prove sufficient to pay the annuities and legacies as they then stood. There were also other specific legacies declared in the will. The residue of the estate was devised to trustees to pay debts, provide for the exoneration of the real estate previously devised from all mortgages and incumbrances, and for the payment of certain legacies and annuities therein specified, some of which were to relatives of the testator and others not. By a codicil, some of these legacies and annuities were revoked, and by a subsequent codicil restored on condition that the estate was more than sufficient to satisfy the prior testamentary provisions. The trustees were empowered by the will, if they should consider it for the interest of the estate, to delay payment of any legacies for any period not exceeding five years. *Held,* on a bill in equity, brought after the death of the testator's wife, by the executors and trustees for instructions, the personal estate not specifically bequeathed having been applied to the payment of debts and the expenses of administration, and the real estate being inadequate to meet the requirements of the will, that the provisions in favor of the widow stood first in order of priority, and were not subject to any abatement in favor of any other devisee or legatee; that the provisions in favor of the son, son's

wife, and the absolute provisions in favor of the testator's wife's sister stood next in priority, (without deciding their standing as to each other,) but that from the income of the estate payable to the son, the two annuities specified were first to be paid, and that the conditional annuities to the wife's sister were excluded from such priority; and that, in case the residuary fund was insufficient to pay those entitled to priority, the specific devisees and legatees must contribute proportionally according to the value of their interests, annuitants standing on the same footing as legatees; that the specific legacies stood next in order, then the bequests unrevoked, and last the revoked bequests that had been conditionally restored. *Held, also,* that the administrator of the wife of the testator was entitled to the unpaid annuities given her by the will, subject to all payments to the son necessary to bring up his income to $4500. *Held, also,* that, in case of deficiency of income, the annuitants were to be paid out of the principal of the estate. *Held, also,* that the provision that, in case the income of the specific estate was not sufficient to pay the son $4500, the amount necessary to make it up should be taken out of the annuity of $12,000 to the wife, was limited to the life of the wife, and that, after her death, the son was not entitled to have any deficiency made up to him out of the general estate.

If a trustee under a will, to whom is devised the residue of the testator's real and personal estate to pay legacies and annuities, is given full power to sell and to make all such changes and investments as may seem to him desirable, this court will not, on a bill in equity by the trustee for instructions, consider the question as to what provision should be made for securing to the annuitants the future payments to become due, or other questions relating to the best mode of administering the estate.

As a general rule, land specifically devised is, in the absence of an expressed intention to the contrary, to be exonerated from all mortgages placed upon it by the testator; and, where several parcels are so devised to different persons, the fact that as to some of the parcels the testator has directed his trustees to remove such incumbrances, when they deem it expedient, does not prevent the general rule from applying to the other parcels.

A testator, by his will, devised his homestead to his wife for life, with remainder after her death to his son for life, and after his death to his son's wife. By a codicil, he directed his trustees to pay out of the residue of his estate " the taxes, insurance and cost of repairs upon all real estate devised to them in trust for my said wife or devised to her." By a subsequent codicil he directed his trustees to keep the buildings upon the land devised to his wife, his son and his son's wife fully insured, and, in case they should be destroyed, to rebuild the same. *Held,* that the provision as to taxes and repairs was limited to the life of the wife.

A testator, by his will, devised his homestead estate to his wife for life, and after her death to his only son for life, and after his death to his son's wife during the life of any child of his son, provided the son's wife should occupy the estate as a residence. He also bequeathed to the same persons in the same order all his "household furniture, plate, jewelry, books, horses, harnesses, carriages and stable furniture." The son and his wife, since their marriage, had lived with the testator and his wife in the house on the homestead estate, as one family. Bronzes, statuary and pictures were placed in various parts of the house, in order to render it more comfortable and agreeable as a place of residence, and were not out of proportion to the testator's means, or the general style of furnishing the house. *Held,* that they were included in the term " household furniture."

BILL IN EQUITY by the executors of and trustees under the will of Samuel A. Way, to obtain the instructions of the court. Hearing before *Endicott*, J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*C. Allen*, for the widow's administrator, and for the son and his wife.

*W. A. Field*, for Mrs. French.

*E. R. Hoar*, for A. P. Potter.

*E. O. Shepard, S. Hoar & E. S. Mansfield*, for various other defendants.

COLT, J. The testator died in June, 1872, leaving a widow and a married son. The widow afterwards married the defendant Hall, and is now deceased, Hall having been appointed her administrator. The will was made in March, 1870, and the testator added to it from time to time seven codicils, the last of which was executed shortly before his death.

An outline of the general plan of the testator in the disposition of the estate, as gathered from the numerous provisions of these instruments, and as finally completed after many changes, will aid in deciding the several points reserved for our consideration, upon which we can properly be required to express an opinion in this stage of the case.

The property of the testator, at the time of his death, consisted largely of different parcels of real estate. His personal property, not specifically bequeathed, has since been applied to the payment of debts and the expenses of administration, leaving a balance due to be paid out of the real estate.

By the will, the homestead of the testator and the real estate connected with it, with all the household furniture, plate, jewelry, books, horses, harnesses, carriages and stable furniture, are given to his wife for life, then, excepting the jewelry, to his son for life, and, after his death, to his son's wife for the life of any child of his son so long as the son's wife shall occupy the homestead, with provision as to the remainders. An annuity of $12,000 is given to the wife for life, which is to come out of the general residue, but which, it is declared, shall have precedence over all other annuities, and not be subject to deduction in case of any failure of his estate. The executors are also requested to pay, out of the general residue created by the ninth clause, all

taxes, insurance and repairs on real estate devised to the wife. These provisions in favor of the wife are made in lieu of dower, or other interest in his estate.

To the son is given, in addition to his interest in the homestead and its furniture, plate, &c., the net income for life of certain real estate in and near Harrison Avenue, (after deducting an annuity of $1000 to the son's wife, and an annuity of $500 to Edwin Fobes,) so far as sufficient, in the language of the will, " to cover all the living and expenditures " of the son.  And, by the seventh codicil, it is provided that if the net income of the Harrison Avenue property shall not be sufficient to pay to the son $4500 net, in addition to the sums to be paid to his wife, and to Edwin Fobes, then the amount necessary to make it up to that sum shall be taken out of the annuity of $12,000 to his wife. By the same codicil, it is provided that if the son or his present wife shall, under the will, come into possession of the homestead estate, the trustees shall, out of the general residue, pay unto him or her, as the case may be, an annuity of $6000, in addition to what they are to receive by the other provisions of the will and codicils, while so in the possession of said estate.  To Mrs. French, a sister of the testator's wife, is given certain real estate in Boston Highlands for life, with an absolute annuity of $3000, and conditional annuities amounting to $2000, also for life ; and it is declared that the provisions in her favor shall take precedence of all others, except those in favor of his wife, son and son's wife.  The insurance on all lands devised to the wife, son and son's wife, and to Mrs. French, is required to be paid out of the general residue; and the buildings, if destroyed, to be rebuilt by the trustees.  There are some other specific devises of interests in real estate for life, and in remainder, which it is not necessary to state in detail.

By the ninth clause of the will, all the residue and remainder of the real and personal estate, with all future remainders and residues, is given to trustees, to pay debts, provide for the exoneration of the real estate previously devised from all mortgages and incumbrances, and for the payment of certain legacies and annuities therein specified.  A few of the annuities, as we have seen, are charged upon the net yearly income of the Harrison Avenue estate.  But most of the annuities, of which

there are a great number, with some pecuniary legacies, are not charged upon any particular estate or upon any particular fund, other than the general residue of the estate, and are made payable out of the residuary real and personal estate by the ninth clause of the will. Many of the annuities of the latter description, and all the pecuniary legacies, except one of $40,000 to Asa P. Potter, were revoked by the sixth codicil, and restored by the seventh codicil, on condition that the estate of the testator should prove more than sufficient to satisfy the prior testamentary provisions. A legacy of $50,000 was by the seventh codicil also given absolutely to the children of his son instead of former provisions in their behalf.

It thus appears that only two money legacies were finally left to be paid absolutely, namely, that to Potter of $40,000, and that to the children of the testator's son of $50,000; and only the following absolute annuities, namely, to the widow, $12,000; to the son and his wife, after the widow's death, $6000; to Mrs. French, $3000; to various other persons, some of whom are relatives of the testator, and others not, about $2500, besides the income of the Harrison Avenue estate, to the parties named above.

The remainder of the residuary estate, after satisfying all the legacies and annuities of the will, is given for the establishment of a public charity for the benefit of the needlewomen of the city of Boston.

To the trustees, to whom by the ninth clause of the will is given all the remainder of the real and personal estate of every nature and description, is given full power to sell and to make all such changes and investments in the estate as may seem to them desirable. They are especially required to provide, out of the real and personal estate not specifically devised, for the exoneration of the real estate so devised from all mortgages and incumbrances, at such times as they may think expedient, keeping the interest paid.

The estate of the testator proves wholly inadequate to meet the requirements of his will. It is said, indeed, that it is not sufficient to meet the payment of the unconditional legacies and annuities. We are called on to determine by whom the deficiency shall be borne. It is always a question of the testator's

intention, to be ascertained from the terms of the will; because that intention must govern in the administration of testamentary assets where there is such deficiency. Thus, as between specific and general legacies, the rule is that the loss must be wholly borne by the latter. A gift of property specifically described necessarily implies that there was no intention on the part of the testator to have compensation made out of his general estate in case the specific gift should fail, and equally implies that there was no intention that other deficiencies in his estate should be made up out of the gift. So, if a legacy is founded on a good consideration, such as a widow's relinquishment of her right of dower, it will not abate with mere beneficiaries, for the widow takes as a purchaser, and it must be presumed that the testator intended first to satisfy the legal claim on his estate.

When the chances of deficiency are anticipated, and provided for by the express terms of the will, then the directions of the testator will of course govern, and the loss must be borne by those on whom he places it, even if the burden is cast upon some of the specific legacies for the benefit of others of that class, or for the benefit of legatees whose bequests are founded on a good consideration. But the presumption of intended equality prevails between general legatees as a class, and between specific legatees as a class, where such legatees are mere beneficiaries, and that equality in respect to the share to be borne in all deficiencies of assets will not be disturbed without clear evidence in the will of a different intention. The fact of near relationship, or dependence, or of the meritorious character of the legatee, is not enough, when the will furnishes no proof of an intention to prefer. It cannot be left to our mere conjecture that other legacies would not have been made by the testator except upon the expectation that his estate would be sufficient to meet them. *Pollard* v. *Pollard*, 1 Allen, 490. *Towle* v. *Swasey*, 106 Mass. 100. *Miller* v. *Huddlestone*, 3 Macn. & Gord. 513. *Lewin* v. *Lewin*, 2 Ves. Sen. 415. *Shepherd* v. *Guernsey*, 9 Paige, 357, 360. *Creed* v. *Creed*, 11 Cl. & Fin. 491. *Farnum* v. *Bascom*, 122 Mass. 282.

We proceed, according to these rules, to the consideration of the questions here presented, in the order in which they stand in the report.

1. It is conceded by all that the provisions in favor of the widow of the testator stand first in order of priority, and that the devise to her is not subject to any abatement in favor of any other devisee. This results both from her relinquishment of her right of dower and from the express provisions of the will. *Towle* v. *Swasey*, 106 Mass. 105. *Pollard* v. *Pollard*, 1 Allen, 490.

2. The provisions for the son and the son's wife and the absolute provisions for Mrs. French stand next in priority to the provisions for the widow. The testator declares that the provisions in his will and codicil in favor of Mrs. French shall take precedence over all others, except those in favor of his wife, his son and his son's wife. It is argued, on the one hand, that the testator intended that the son and his wife should have priority over Mrs. French; and, on the other hand, that the testator's intention was that Mrs. French should stand on an equal footing with the son and his wife. It does not, however, appear to be necessary, in the present condition of the assets, to determine the relation in which the three must stand in case the estate should prove insufficient to pay them all in full. As to all the other legatees the language by which this priority is secured is broad; it embraces all the provisions in favor of all the parties named. It is sufficient to give them preference and right of contribution not merely against the beneficiaries under the general residuary fund, but, if necessary, against all other specific devisees and beneficiaries; the present value of life estates, of estates in remainder, and of all annuities liable to contribute being ascertained by calculation.

To this last general proposition there is, however, one exception, created in this case by the peculiar disposition of the income of the Harrison Avenue property, under the third clause in the will. The amount to be paid therefrom to the son annually ($4500) is made subject to the payment of an annuity to his son's wife of $1000, and of one to Edwin Fobes of $500. The priority which is given to the son and his wife, in respect to all the provisions of the will in his favor, including the income of the estate, cannot be held to affect these last named annuities, which are first to be paid therefrom, and cannot, therefore, be liable to the son for contribution. The testator must have in-

tended that these annuities, so long as the income of the particular estate is sufficient, should take precedence of all except the provisions for the wife.

It should be added that the two legacies of $1000 each to Mrs. French, one by name and the other by description, are excluded from the priority given her in other respects, because when this preference was declared by the seventh codicil these legacies had been revoked, and they were only restored by a later clause in the same codicil, and only on condition that the trustees named in the will should find the estate more than sufficient to pay the annuities and legacies, as they then stood under the provisions of the will and codicils. As to the extent to which the specific devisees or legatees shall contribute in case of a deficiency in the general residuary fund provided by the ninth clause of the will, we find no reason for varying the rule, that all must contribute proportionately according to the value of their interests, so far as may be necessary to provide for the bequests entitled to the priority above stated. Annuities standing in this respect on the same footing as legacies.

3. It is plain that after the priorities above stated, and after the specific legacies which are absolute, all the remaining legatees and annuitants, leaving out the charitable bequest, may be divided into two classes: first, those whose bequests are not revoked, and next, those whose revoked bequests were conditionally restored. In marshalling these assets, the former constitute the next in order of preference, and the latter, so far as their united interest is opposed to the others, constitute the last, with the exception of the charity to the needlewomen.

The question as to what provision should be made for securing to the annuitants the future payments to become due is one which concerns the administration of the estate, and one which the testator has wisely left to the sound discretion and good judgment of the trustees named. It presents no question of law for the court. *Proctor* v. *Heyer*, 122 Mass. 525.

The question is submitted to the court by counsel, whether the annuity given to the wife so vested in her that the unpaid portion of it can now be claimed by her legal representative. By the terms of the will, power is given to the trustees, if for the interest of the estate, to delay the payment of any legacy,

for any period not exceeding five years, interest on the same to be added after the expiration of one year from the day of the testator's death. The annuity to the wife was never paid in full, because the net income of the estate proved insufficient. She died before the bringing of this bill, having married the defendant Hall, who now, as her administrator, claims the unpaid balance of the accumulated annuities given to her. We have no doubt that the annuity to the wife vested absolutely in her, and now belongs to her administrator, subject, of course, to all payments to the son, which were necessary to bring up his residuary income from the Harrison Avenue estate to $4500. *Pinkerton* v. *Sargent*, 112 Mass. 110, 113. *Pollock* v. *Learned*, 102 Mass. 49, 54. *Pollard* v. *Pollard*, 1 Allen, 490.

In case of deficiency of income, the annuitants are to be paid out of the principal of the estate in the order above indicated. There is no intention, expressed or to be implied, that the rents or income of the residuary real and personal estate is to be the fund for the payment of annuities and legacies. On the contrary, the will declares that all the annuities and legacies, other than the annuities and specific legacies charged on the income of the Harrison Avenue estate, shall be paid out of the residuary estate generally. *Warren* v. *Gregg*, 116 Mass. 304. *Wright* v. *Callender*, 2 De G., M. & G. 652. *Croly* v. *Weld*, 3 De G., M. & G. 993. 2 Story Eq. Jur. § 1064 *a*.

4. As to the exoneration of the estates specifically devised, the general rule is that, in the absence of any expressed intention to the contrary, such estates are to be relieved from all mortgages placed upon them by the testator. There is no reason why this rule should not be applied to the specific devises in this will, having regard to their priority. The testator provides for the exoneration of some of them when the trustees shall deem it expedient, keeping down the interest in the mean time. But this special mention of some does not require us to infer that other specific devises were not to come within the general rule. *Wilcox* v. *Wilcox*, 13 Allen, 252. *Andrews* v. *Bishop*, 5 Allen, 490. *Conron* v. *Conron*, 7 H. L. Cas. 168. See also *Ancaster* v. *Mayer*, 1 Bro. Ch. 454, and 1 White & Tudor's Lead. Cas. (5th ed.) 681.

5. By the fifth codicil, the trustees are required to pay out of the residuary estate, devised to them by the ninth clause of the will, "the taxes, insurance and cost of repairs upon all real estate devised in trust for my said wife, or devised to her use." It is contended that the provision is general, and requires the payment of these expenses upon all the estate, without being limited to the life interest of the wife. But this provision appears to have been intended solely for the benefit of the wife, and to increase the value of her life estate. That this is so is confirmed by the fact that the testator, by a provision in a subsequent codicil in favor of his wife, his son and his son's wife, extended the provision as to insurance to all of them, adding a new requirement on the trustees to rebuild in case of loss, but not extending the provisions as to taxes and repairs, previously made in favor of the wife only. The requirements of these clauses relating to taxes, repairs and insurance must be carried out in favor of the parties named in the first instance, if possible, out of the residuary estate of the ninth clause in the will, otherwise out of the other legacies and annuities, in the order of priority heretofore stated.

6. It is contended that the bronzes, statuary and pictures are included in the bequest of " all the household furniture," and passed to the wife for her life, then to the son for his life, and then to the son's wife during the life of any of the son's children while she occupied the homestead. The case finds that the bronzes, statuary and pictures were distributed and used in various parts of the homestead in Mount Vernon Street, in order to render it more comfortable and agreeable as a place of residence; that they were not out of proportion to the testator's means, or the general style of furnishing the house; and that the son and his wife, from the time of their marriage in 1860, lived with his father and mother as one family at the homestead. It is to be noticed that the devise of the furniture, plate, &c., accompanies the devise of the house in which it was used, and is sufficient to carry all the usual contents of such a house, with the horses, carriages, stable and its contents. It is manifest that the testator intended that the house should remain the place of residence of his widow and of his son's family, and that they should keep up the same establishment and the same style of living. No men-

tion is made of the articles in question elsewhere in the will or codicils, and we have no doubt they were intended to pass as household furniture.

In *Kelly* v. *Powlet*, Ambl. 605, the Master of the Rolls, Sir Thomas Clarke, decided that household furniture comprised everything that contributed to the use or convenience of the householder, or to the ornament of the house. And in *Cremorne* v. *Antrobus*, 5 Russ. 312, 319, Lord Lyndhurst declared that a bequest to the wife of the testator's leasehold house, with all the furniture therewith belonging, embraced pictures placed in the house as ornamental furniture. See also *Paton* v. *Sheppard*, 10 Sim 186 ; *Field* v. *Peckett*, 29 Beav. 576.

7 The balance of the net income of the Harrison Avenue estate has not been sufficient to pay the sum of $4500 a year to the son. It is contended that the direction in the seventh codicil, that this amount should be made up to him from the annuity given to his mother, was not intended to be limited to her life, and that he is entitled to have it made up to him from the general estate. This depends on whether the annuity is to be treated as specific, or as general and demonstrative in its character. If it is the former, then it must fail, unless paid in the particular mode pointed out; if the latter, then, although it has a prior claim upon the particular fund, yet in all other respects it is placed on a footing with the general legacies to be paid in full out of the general assets, if sufficient, and entitled to such preferences in other respects as may be declared by the testator.

It is a question of the testator's intention, and the intention to make a specific legacy must be clear. By the third clause in the will, the estate is devised to trustees in trust to pay so much of the balance of the net yearly profits of it to the son as may be sufficient for his living and expenditures, and to give the rest, if any, to such charities as to them may seem good, in default of any directions from him. This is a bequest uncertain in amount, contingent in character, and dependent wholly upon the income of the estate designated. Afterwards, and shortly before his death, when he began to contemplate that his property might not be sufficient to satisfy all the provisions of his will, he provided in the seventh codicil that the son should receive enough, if necessary, out of the wife's annuity to make, with the income

of this estate, $4500 each year to the son, and then provided that when the son should come into the possession of the homestead, that is, after the death of the wife, he should receive an additional annuity of $6000, thus providing for the anticipated diminution in his income, and manifesting a plain intention that the gift of the uncertain balance of income from the estate in question was a specific devise, not to be made up from the general estate. It cannot be treated as a demonstrative legacy, when it is impossible, without reference to the particular fund, to ascertain definitely the amount of the annuity or legacy given, the payment of which, upon the failure of the fund, it is contended must be charged on the general estate. *Roberts* v. *Pocock*, 4 Ves. 150. *Wilcox* v. *Wilcox*, 13 Allen, 256. *Walls* v. *Stewart*, 16 Penn. St. 275. *Armstrong's Appeal*, 63 Penn. St. 312. *Walton* v. *Walton*, 7 Johns. Ch. 258, 262. *Paget* v. *Huish*, 1 Hem. & Mil. 663. *Bevan* v. *Attorney General*, 4 Giff. 361. *Mann* v. *Copland*, 2 Madd. 223, 226.

Some other questions which plainly relate to the best mode of administering the estate, for the reasons above given, we have not considered. The points here decided, in the present aspects of the case and the present value of the assets, are, in the opinion of the court, sufficient to meet all the necessities that have arisen or may arise in the settlement of the estate.

It is proper to add that we have been much aided in the decision of the case by the careful analysis of the will and codicils prepared by counsel, and by the several arguments upon the questions raised. *Decree accordingly.*