CHARLES W. MORSE & others *vs.* ABIGAIL BASSETT
& others.

Worcester.   Jan. 26. — April 12, 1882.   ENDICOTT & FIELD, JJ., absent.

An owner of a parcel of land mortgaged it to B., and died, leaving a will, by which
he devised the land to his wife A. for her life, and at her death to C., and appoint-
ed A. executrix.   The mortgage was unpaid at the testator's death, and there was
no other incumbrance on the estate.   Immediately after his death, A., acting as
executrix, although the will was not proved and allowed until seven years after-
wards, took possession of his estate, sold portions of it with which to pay debts,
and substantially settled the estate; but did not pay the mortgage, although the
assets of the estate were sufficient to enable her to do so.   D., acting in collusion
with A., who was his sister, and with the fraudulent purpose of extinguishing
the rights of C., borrowed a sum of money of his brother, E., and with it bought
and took an assignment of the mortgage held by B., and made an entry under
the mortgage for breach of condition, for the purpose of foreclosing the same,
in the presence of two witnesses, of whom E. was one; and the usual certificate
of entry was duly made and recorded, together with the assignment.   During
the three years following the entry, A., upon inquiry by C., repeatedly stated
to him that she was keeping the interest on the mortgage paid up.   A. continued
to occupy the estate after the entry by D., who subsequently conveyed all his
interest therein to her.   A. afterwards made a mortgage of the estate to E. to
secure a sum of money, the principal and interest of which remained unpaid.
E. had no knowledge of the collusion between A. and D., and did not participate
in their fraudulent purpose.   A. died, leaving a will, by which she gave said
estate to F., who was appointed executor, and gave bond.   The estate of A.
was more than sufficient to pay all her debts, including the mortgage to E.   C.
did not know of the purchase of the mortgage by, or the entry of, D. until after
the death of A., when he demanded possession of the estate of F., who refused
to give up the same.   *Held,* on a bill in equity by C. to redeem the estate, that
the mortgage to B. was discharged; that the mortgage to E. was valid, and
C. must pay the amount due thereon; and that F. must surrender the premises
to C., and account for the rents and profits since the death of A.

BILL IN EQUITY, filed June 21, 1880, by Charles W. Morse,
and Hannah G. Morse, his wife, and Dwight Smith and others,
trustees of the Methodist Episcopal Church of Athol, to obtain
the cancellation of two mortgages on land in Athol, or, if the
mortgages should be declared to be existing incumbrances on
the land, to redeem the same.   The case was referred to a mas-
ter, who found the following facts:

On July 6, 1846, Sumner R. Morse, who owned the premises
in question, consisting of a lot of land with a house thereon,
which he occupied as his homestead, made a mortgage of the
same to Joseph Estabrook to secure the payment of $600 on

demand with interest. On January 11, 1863, Estabrook assigned the mortgage to Harriet A. Clark. Both the mortgage and the assignment were duly recorded. On December 11, 1870, Sumner R. Morse died, leaving a will, of which he appointed his wife, Mary T. Morse, executrix, and by which he gave to her in fee the rest and residue of his estate real and personal, and his homestead estate during her life, and, at her death, the homestead estate to Charles W. Morse and Hannah T. Morse, his wife, for their lives or the life of the survivor of them, and, after their death, to the Methodist Episcopal Church in Athol. At the time of his death, he was the owner of said homestead estate and occupied it as such, and it was subject to no incumbrance except the mortgage held by Clark, upon which the principal and interest for less than six months at six per cent per annum was then due. The will was not proved and allowed until November 6, 1877. Sumner R. Morse left real and personal estate, and also owed several debts. Immediately after his death, his wife, acting as executrix, although she had not been regularly appointed as such, took possession of all his real and personal estate, sold portions of the real and all of the personal property, and paid his debts, and substantially settled his estate according to the provisions of the will. She received from his estate property more than sufficient to pay his debts and the amount due on said mortgage.

For the purpose of acquiring the mortgage held by Clark upon said homestead estate, with a view to foreclose the same and thereby to acquire in his own name an absolute title to said estate for the benefit of Mary T. Morse, and to cut off and extinguish the interest of the plaintiffs for her benefit, Abner G. Stratton, the brother of Mary T. Morse, borrowed of his brother, Amos T. Stratton, the sum of $630, and with said money, on May 11, 1871, purchased and took an assignment of said mortgage from Clark; and on May 15, 1871, with the same purpose and intent, Abner G. Stratton, in the presence of two witnesses, made an entry under said mortgage upon said homestead estate for the purpose by him declared of foreclosing said mortgage for breach of the condition thereof; and afterwards said witnesses made a certificate under oath, as provided in the Gen. Sts. c. 140, § 2, which certificate, together with said assignment, was duly

recorded in the registry of deeds, on May 17, 1871. After said entry Mary T. continued to occupy said estate, as she had done before, as her place of residence, except, however, that it was agreed between her and Abner G. that she should pay him the sum of $100 per annum, which was called by the parties rent for the use of the premises.

Mary T. Morse knew of the purpose and intent of Abner G., as before stated, and after said entry and during the three years then next ensuing, upon inquiry being made of her by the plaintiff Charles W. Morse, whether she had paid the interest upon said mortgage, she fraudulently stated to him that she had, and fraudulently kept from him the fact that said mortgage had been purchased and an entry made as aforesaid.

In purchasing said mortgage, making said entry, and allowing three years to expire without redeeming said mortgage, and keeping secret the fact of said entry from the plaintiffs, Abner G. and Mary T. acted in collusion, and with a fraudulent intent and purpose thereby to cut off and extinguish the interests of the plaintiffs in said estate under the will, and to secure the same for the benefit of Mary T.

On June 27, 1874, Abner G. conveyed all his interest in said homestead estate to Mary T. On March 19, 1875, Mary T., acting individually and not as executrix, executed and delivered to the defendant Amos T. Stratton a mortgage upon said homestead estate to secure the payment of $600 and interest at six per cent per annum. Interest has been paid thereon to March 19, 1879, and said $600 and interest thereon from that date is now unpaid.

Amos T. knew of the possession taken by Abner G. Stratton under said first-named mortgage, as he was one of the witnesses thereto and subscribed the certificate thereof; but the master did not find that he participated in the fraudulent intent and purpose of Mary T. and Abner G., or had knowledge of the collusion between them as above stated.

Mary T. Morse died on March 2, 1880, leaving a will, which has been duly proved and allowed, and by which said homestead estate was devised to the defendant Abigail Bassett as residuary devisee; Abigail was appointed executrix of said will, and gave a bond as provided by law; and the estate of Mary T. was more

than sufficient to pay all her debts, including the mortgage note to Amos T. Stratton aforesaid.

Until after the death of Mary T. Morse, the plaintiffs never knew or heard of the purchase of said mortgage by Abner G. Stratton from Clark, or of the possession of Abner G. taken thereunder; and they failed to make inquiries concerning said mortgage, and were misled in respect thereto by reason of the statements made by Mary T. to the plaintiff Charles W. Morse, at several different times after said certificate was recorded, that she was keeping the interest on said mortgage paid up. After the death of Sumner R. Morse, Mary T. had possession of said estate until her decease; and, immediately after her decease, Abigail Bassett entered into possession of the premises, and has retained the same ever since, and she has no other or greater interest in the property than Mary T. had at the time of her death.

After the death of Mary T. Morse, and before the filing of this bill, the plaintiffs demanded of Abigail Bassett the possession of said homestead estate, which she refused to give them, or either of them, and claimed to hold the same under the will of Mary T. Morse.

Upon the foregoing facts, the master found that the entry under the mortgage was not followed by any such possession as to effect the foreclosure of the mortgage, and that the mortgage had never been foreclosed; that the conveyance from Abner G. Stratton to Mary T. Morse operated as an assignment of the mortgage; that it was the duty of Mary T. Morse to apply the property of her husband to the payment of the mortgage, and that she and all parties claiming under her were estopped, as against the plaintiffs, from claiming any title to said land under the mortgage, or under any conveyance made by her; and that nothing was due from the plaintiffs to the defendants, or any of them, on account of said mortgage; that, by the mortgage made by Mary T. Morse to Amos T. Stratton, no interest passed which was valid as against the plaintiffs; and that the plaintiffs were entitled to a decree giving them possession of the homestead estate, and setting aside the two mortgages.

Hearing before *Devens*, J., who reserved the case for the consideration of the full court, such decree to be entered as justice might require.

*M. F. Dickinson, Jr. & H. R. Bailey*, for the plaintiffs.

*F. F. Fay*, for the defendants.

DEVENS, J.   The homestead in which Mrs. Mary T. Morse, the widow of Sumner R. Morse, who was named as the executrix of his will, had a life estate, the plaintiffs a subsequent life estate, and the Methodist Episcopal Church in Athol a remainder, was subject to a mortgage to Joseph Estabrook for the sum of $600. The interest of all parties was an interest in property specifically devised.   Unless a contrary intention appear, such real property is to be exonerated from the incumbrances placed thereon by the testator or his ancestor, upon the general principle that the personal property of the testator forms the primary fund for the payment of his debts.   In order to fasten such an incumbrance on land thus devised, there must be a clear expression of intent to that effect.   *Hewes* v. *Dehon*, 3 Gray, 205.   *Plimpton* v. *Fuller*, 11 Allen, 139.   *Richardson* v. *Hall*, 124 Mass. 228.   *Johnson* v. *Goss*, 128 Mass. 433.   The devise of a term in real estate, or of a remainder after a term, is not less specific than that of the entire estate.   *Farnum* v. *Bascom*, 122 Mass. 282.

Had therefore Mrs. Morse been legally the executrix of the estate at the time the mortgage was bought by Abner G. Stratton, as she possessed funds, it would have been her duty to pay the mortgage and relieve the homestead estate, but she had not been appointed to this trust at that time.   It is found that, acting in collusion with her, and for the purpose and with the fraudulent intent of extinguishing the rights of the plaintiffs, Abner borrowed the money and purchased the mortgage of Estabrook; that the forms of a foreclosure were gone through with, which would apparently vest the title in him; and, this being done, that the estate, thus apparently obtained by foreclosure, was conveyed by him to Mrs. Morse.   During the time that the three years' possession was expiring, the plaintiffs were lulled into security by repeated statements by Mrs. Morse that she was keeping the interest of the mortgage paid up.

That Abner G. Stratton could have purchased this mortgage and proceeded to foreclose it, even if his object had been to vest the title thus acquired in his sister, may be conceded.   He was a stranger, having no relations to the estate, and no duty to those

who claimed under the will; he could purchase the mortgage as he might any other personal security, and avail himself of the ordinary means of enforcing it against the property, or of collecting it. But he could not lawfully enter into any transactions with one who had a fiduciary relation to the estate under the will, nor coöperate with her in lulling other beneficiaries into security by false representations that no such claim was being enforced, and thus obtain a title legal in form, which such a person could successfully maintain against those who had been thus deceived. Mrs. Morse did occupy a relation of peculiar trust towards the plaintiffs. She was the tenant of the life estate, and as such it was her duty to keep down the interest on the mortgage, and she falsely represented she was doing this. She also had taken possession, as executrix named in the will, of the whole estate of the testator, and was dealing with it as if the will had been admitted to probate. The estate was amply sufficient to pay all debts including this mortgage, which, in favor of the specific devisees, was a proper charge on the personal property. She sold the personal property, paid off with it debts and other mortgages, and had in fact disposed of it substantially according to the directions of the will, except so far as this estate is concerned, before the admission of the will to probate. Had she paid this mortgage debt to Estabrook, as it would have been the duty of the rightful executrix to do, and had she afterwards been properly appointed, her payment would have been validated and allowed in her account. Had the transactions carried on between her and Abner been conducted with the money of the estate, the plaintiffs could have had the benefit of them as done for the estate. It cannot, as against her, make any difference that the money of the estate was not used, but instead thereof money which was borrowed by Abner, while she held the money of the estate which should have been devoted to the payment of the mortgage. Standing in the relation she did to the estate and to the plaintiffs, she cannot be allowed to say that she was acting adversely to them; and, having entered into a transaction for the purpose of cutting them off, she cannot be allowed to say she has succeeded, by means of an abuse of their confidence in her, and her possession of funds, which otherwise might have been, and properly should have been, devoted to the payment of

this mortgage. The argument of the defendants is, that, when she bought this title, she was not executrix, and owed no duty to the plaintiffs; and that, when she became executrix, the mortgage had been for a long time extinguished, and therefore there was no debt. This is not tenable. She cannot thus escape the responsibilities which she assumed by dealing with the property as executrix named in the will. Any title which she thus ac-: quired must have been obtained for the benefit of those entitled to regard her as in a fiduciary relation to those interested under the will. Treating the transaction as it is viewed by the master, the proceedings thus fraudulently conducted between Abner and Mrs. Morse did not operate, as against the plaintiffs, as a foreclosure, but only as an assignment of the mortgage; and an assignment of a mortgage to one who, for the benefit of others, is bound to extinguish it, is a discharge. *Wadsworth* v. *Williams*, 100 Mass. 126.

If the effect of the transaction was to invest her with a legal record title, that title she must hold for the uses for which the estate was devised by will. We are of opinion that such was its effect, except so far as the rights of third persons are concerned. This is a matter of much importance, so far as the rights of Amos T. Stratton as well as those of the plaintiffs are concerned. About a year after the foreclosure proceedings terminated and Mrs. Morse obtained her record title thereby, a mortgage of this estate was made by her to Amos T. Stratton, which was for money then advanced, and is found to be a *bona fide* mortgage. From the fact that it is in amount nearly the same as the money borrowed by Abner G. Stratton from him, and exactly equal to the Estabrook mortgage, it may well have been that it was intended to reimburse Abner, and to have a mortgage on the estate equal to what the Estabrook mortgage had been, while the subsequent devisees would apparently be deprived of their estate in the land by the foreclosure of that mortgage.

Whatever the design of Mrs. Morse, nothing appears to show that Amos participated in it. The fact that he was one of the witnesses to the entry of Abner is not important. His knowledge of that cannot charge him with knowledge that Abner was acting in collusion with Mrs. Morse to deprive the subsequent

tenants of their interest in the estate. An entry under the mortgage bought by Abner to foreclose, which was the only act known to him, was an ordinary and lawful proceeding. The master distinctly declines to find that he participated in any fraudulent purpose of Abner and Mrs. Morse, or had knowledge of any fraudulent purpose on their part. Mrs. Morse had a title by record to this property apparently perfect. All the proceedings necessary to foreclose the mortgage had been taken. There had been an entry made in the presence of witnesses, which had been recorded, on the tenant in possession, who had agreed to pay rent. This entry had been maintained by possession for three years. The possession which the law contemplates may be constructive, and it will be presumed to continue after the open peaceable entry which the law requires has been formally made, even if the mortgagor remain on the premises. *Ellis* v. *Drake*, 8 Allen, 161, 163. *Fletcher* v. *Cary*, 103 Mass. 475, 477. All that a lawful owner of the mortgage acting without any collusion with the tenant in possession would ordinarily do had been done. Nor is the fact that the assignee of the mortgage, when his title was completed, conveyed to the tenant for life, any notice to a third party of anything wrong in the transaction. The tenant for life might lawfully purchase such a title. An executor indeed might lawfully do so for his own benefit, using his own money for the purpose, and not being in possession of assets from the testator's estate, which it would be his duty to apply to prevent the foreclosure of the mortgage on which such a title rested. *Sanderson* v. *Edwards*, 111 Mass. 335, 341.

While the master might find that, as between Abner and Mrs. Morse, the title had not passed so as to foreclose the mortgage as to the plaintiffs, or rather that the title thus passed was held by Mrs. Morse in trust for the other beneficiaries of the testator as well as herself, he could not thus decide in regard to such a third party. The fraud which made the transaction, so far as Mrs. Morse was concerned, one which compelled her to hold the estate subject to the rights of the other devisees, did not affect him. All the information required to be given of the foreclosure of the Estabrook mortgage appeared upon the record, which was perfect, and the plaintiffs cannot make him responsible

for their neglect to observe the proceedings against their property, or the false security into which they were lulled by no act of his.

It will be necessary for the plaintiffs to pay what is due upon this mortgage before they can hold the estate discharged from it. Mrs. Bassett, devisee and legatee under Mrs. Morse's will, cannot object to this; she has no such title as that which Amos acquired. Not being a purchaser for value, but a simple beneficiary under Mrs. Morse's will, she can have no higher claim than her testatrix.

Whether, if the plaintiffs shall redeem this incumbrance thus placed on the estate, they are entitled to a remedy against the estate of Mrs. Morse, is an inquiry not presented by the bill in its present shape, which deals only with the question whether the mortgage to Amos T. Stratton is valid, but seeks no remedy on that account, should it be so held. This mortgage is decreed to be valid; that to Estabrook is held to have been discharged; and the plaintiffs are entitled to a decree which shall compel Mrs. Bassett to surrender the premises and account for the rents and profits since the decease of Mrs. Morse.

*Decree accordingly.*