WILLIAM W. ALLEN, Respondent, *v.* THE GROVE SPRINGS HOTEL
    AND STEAMBOAT COMPANY (LIMITED), Appellant.

*Oral sale of a piano within the Statute of Frauds — acts sufficient to make an
    acceptance and receipt — "furniture" in a hotel includes a piano.*

A hotel company, which had held a piano for years under a lease, orally agreed
    by its president to purchase it for $450, and thereafter paid no rent for it.   The
    company subsequently, and within a few months after and with notice of the
    agreement of purchase made by its president, leased the hotel "and the furni-
    ture and other property in said hotel" to a third person, who enjoyed the use
    and possession of the instrument.

*Held,* that these facts amounted to such an acceptance as took the case out of the
    Statute of Frauds and entitled the vendor to sue for the price of the piano.

A piano, although not specially named in a lease of a hotel and "its furniture,"
    is an article so necessary and customary that it may properly be regarded as
    passing under the term "furniture."

APPEAL by the defendant, The Grove Springs Hotel and Steam-
boat Company (Limited), from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the county
of Steuben on the 26th day of February, 1894, upon the report
of a referee.

*George T. Spencer,* for the appellant.

*Monroe Wheeler,* for the respondent.

LEWIS, J.:

This action was brought to recover the value of a piano which the
plaintiff claimed to have sold to the defendant in the spring of 1887,
at the agreed price of $450.

The defendant is a foreign corporation organized under the laws
of the State of Illinois in 1887; it was the proprietor of a summer
hotel at the village of Grove Springs, on Lake Keuka, known as
" Grove Springs Hotel."

The hotel, prior to the spring of 1893, had been run by a tenant
of the defendant.   In the spring of that year the defendant assumed
its management; there was at that time in the hotel a piano belong-
ing to the plaintiff.   He had placed it in the hotel under an arrange-
ment with the tenant that he would pay to the plaintiff an annual

rental of twenty-five dollars until he should determine if he wished to purchase it.

When the defendant assumed the management of the hotel in the spring of 1883 the plaintiff negotiated with its president, John W. Conlogue, with a view of selling the piano to the defendant. Mr. Conlogue declined to purchase it then, but promised if the plaintiff would allow the piano to remain in the hotel he would purchase it in the fall of that year, and in the meantime would pay the same rental as had been theretofore paid for its use. Mr. Conlogue stated to the plaintiff that they needed the piano in the hotel for the use of guests. He had authority to purchase the piano; it remained in the hotel down to and including the year 1886, and defendant paid for its use.

In the spring of 1887 plaintiff agreed with Conlogue to sell and deliver the piano to the defendant at the agreed price of $450, the defendant to pay therefor within a short time thereafter. The agreement was oral; it was made in the village of Hammondsport at a distance of several miles from the hotel. Mr. Conlogue died shortly after making the agreement and Mr. Henry H. Courtright was appointed president in his place.

The defendant had notice of the making of the agreement by its former president, and thereafter, and in the month of May, 1887, it gave a written lease of the hotel and the property therein for a term of five months to one Charles W. Lane. The property was described therein as "The Grove Spring Hotel and the furniture and other property in said hotel." The piano remained in the hotel during the term of Mr. Lane's lease. On the 21st day of April, 1888, the defendant again leased said hotel with all the fixtures and furniture of every kind and sort in and about said hotel to one Omar F. Gage for the period of one year from the 1st day of April, 1888, with the privilege of two additional years.

At the time of making the lease to Gage the piano was in the hotel, and the defendant put the tenant in possession of the hotel with the furniture, including the piano. The piano remained in the hotel and under the defendant's control down to the time of the trial of this action. No rent was paid for its use after the arrangement made as aforesaid with defendant's president in the spring of 1887.

The referee found as a conclusion of law from the foregoing facts that the plaintiff was entitled to judgment for the $450, with interest thereon from the 21st day of April, 1888. The agreement for the sale of the piano not being in writing was void under the Statute of Frauds, unless there was a delivery and acceptance of it under said agreement. The referee found as a fact that the defendant made the leases mentioned with notice of the said agreement of sale. The evidence to sustain this finding was quite meagre, but we think it was sufficient.

The plaintiff, at the time of making the agreement, sold the defendant a cover belonging with the piano, which the defendant paid for at the time. The plaintiff's agent, Mr. Allen, testified that he knew Mr. Courtright, defendant's president, and that in the summer of 1887 he went down to the Grove Springs Hotel to see Mr. Courtright about the pay for the piano and saw him, but does not state what occurred. The plaintiff testified that his agent reported the sale of the piano to him shortly after the agreement mentioned, and that he had never received any notice from any one to remove the piano since the sale was so reported to him ; that he had seen the piano in the hotel parlor as late as 1892, and that it was then open and in use ; that he wrote to defendant's president about the piano after the sale was reported to him.

The fact that the defendant assumed to lease the piano to its tenants as above stated and never thereafter offered to pay for its use, taken in connection with the facts testified to by the plaintiff and his agent, was sufficient to justify the referee's conclusion that the defendant was aware of the agreement for the sale of the piano at the times the leases were executed.

While the piano was not specifically mentioned in either of the leases we are of the opinion that it was included in the property leased. A piano has come to be a part of the furnishing of private dwellings, and especially so of hotels. A hotel making any pretension to being well furnished which did not provide a piano for the use of its guests would excite comment.

It was held in *Crossman* v. *Baldwin* (49 Conn. 490 ; see Browne's Judicial Interpretation of Common Words and Phrases, p. 140) that a piano is part of the furniture of a hotel, when kept for the use of the guests. The court said : " That a piano used as this was is

FIFTH DEPARTMENT, MARCH TERM, 1895.    [Vol. 85.

furniture used in innkeeping, we can entertain no doubt. The definition given by Bouvier in his Law Dictionary is as follows, 'personal chattels in the use of a family. By the term household furniture in a will all personal chattels will pass which may contribute to the use or convenience of the householder, or the ornament of the house, as plate, linen, china, both useful and ornamental, and pictures.' Webster defines it as 'that which furnishes, or with which anything is furnished or supplied, fitting out, supply of necessary, convenient or ornamental articles for any business or residence, also a supply of intellectual stores or equipments.' That these definitions are comprehensive enough to include this piano admits of no question."

In *Von Storch* v. *Winslow* (13 R. I. 23) it was held that a sewing machine and a piano are household furniture exempt from attachment.

In *Richardson* v. *Hall* (124 Mass. 228) that bronzes, statuary and pictures were included in a bequest of all the household furniture, it appearing that they were distributed about the household with a view to making it more comfortable and agreeable as a place of residence.

We think that the defendant, by making the leases aforesaid, assumed to and did lease the piano to its tenants, and, having done so with knowledge of the oral agreement on the part of its president to purchase and pay for the same, indicated a manifest intention to receive and accept the piano as its property and thereby became liable to the plaintiff for its value.

The judgment appealed from should be affirmed.

DWIGHT, P. J., and BRADLEY, J., concurred.

Judgment affirmed.