WILLIAM A. RICHARDSON and others, executors, *vs.* JOHN R. HALL, administrator, and others.

Suffolk. March 20. — June 26, 1879. AMES & LORD, JJ., absent.

A testator, by his will, gave to his wife, for her life, his homestead estate and the personal property used with it, also an annuity of $12,000 out of the general residue of his estate, which it was declared should take precedence of all other annuities, and not be subject to deduction or contribution. These provisions were declared to be in lieu of dower. To his only son, and after his death to the son's wife, he gave a life interest in the homestead and personal property, after the death of the testator's wife, also the net income of certain real estate,

(after deducting two small annuities,) so far as sufficient to cover all the living and expenditures of the son. By a codicil it was provided that, if the net income of the real estate was not sufficient to pay to the son $4500 annually, the amount necessary to make it up to that sum should be taken out of the annuity of $12,000 to the testator's wife; and it was also provided that an annuity of $6000 should be paid to the son or his wife out of the general residue, while either was in possession of the homestead. To the testator's wife's sister was given a certain parcel of land for life and an absolute annuity. By a subsequent codicil it was declared that the provisions in her favor should take precedence of all others, except those in favor of the testator's wife, his son and son's wife. *Held,* that the provisions in favor of the son and the son's wife took precedence of those in favor of the testator's wife's sister.

COLT, J. At a former hearing of this case, upon the application of the executors and trustees for instructions, the court was required to determine in what manner a deficiency in the assets of the estate of Samuel A. Way, which proved inadequate to meet the requirements of his will, should be borne by the legatees named therein. See 124 Mass. 228. It was then decided that the provisions in favor of the widow of the testator stood first in the order of priority, and were not subject to abatement in favor of any other devisee; and that those in favor of the only son and of the son's wife, and the absolute provisions in favor of Mrs. French, were, with some exceptions, not necessary now to notice, next in priority, and constituted a class by themselves.

The assets of the estate were then supposed to be sufficient for the payment of these last-named legacies in full, with a balance to be distributed at least among the unconditional legacies and annuities, constituting what was considered to be the next or third class in the order of preference. ˙It was not thought necessary, in anticipation of an increased deficiency which might never arise, to determine the question of priority among the legatees thus treated as belonging to the second class.

The son of the testator and the son's wife, defendants in the original suit, now join in a petition for further directions upon the question whether the provisions in their favor are entitled to priority over the absolute legacies in favor of Mrs. French, alleging that since the former hearing and decree the estate has so diminished in value that it has become necessary to settle that question. This is the only question for consideration.

The priority over other legatees, to which the son, son's wife and Mrs. French are entitled, is established by the declaration of the testator in the seventh codicil, "that the provisions of his will and codicils in favor of Mrs. French shall take precedence of all others except those in favor of his wife, son and son's wife." The order of precedence among the legatees so named is not distinctly determined by this clause. If it depended alone upon the construction to be given to these words, there might be difficulty in finding a clear intention that the parties were to take priority in the order in which they are named, instead of standing side by side and being equally subject to abatement in case of a deficiency. But it does not depend on this clause alone; the intention of the testator must be gathered from all the provisions of the will. It is said that the burden lies on the party seeking priority to make out that it was intended' by the testator, and that the proof of this must be clear and conclusive, for the reasons that, in the absence of evidence to the contrary, the testator must be deemed to have considered his estate sufficient to pay all legacies. *Miller* v. *Huddlestone*, 3 Macn. & Gord. 513.

It is to be noticed that the case at bar does not seem to come within the reason given, because the clause relied on in the seventh codicil, as well as other provisions in the will and codicils, clearly disclose an apprehension on the part of the testator that his estate would not be sufficient, and manifest a purpose to provide for that contingency. This presumption of intended equality loses much of its weight, therefore, and the question of precedence must be determined under ordinary rules by a reasonable interpretation of the will with reference to the character and declared purpose of the legacies in question. It is said that circumstances of near relationship or dependence, though not alone sufficient, may be regarded as auxiliary reasons for allowing such priority when the language of the will fairly justifies the inference that such priority was intended. *Lewin* v. *Lewin*, 2 Ves. Sen. 415. In *Towle* v. *Swasey*, 106 Mass. 100, where the income of a sum named was required to be expended for the support and education of a minor son during his minority, and was not more than sufficient for the purpose, the annuity was held not liable to abatement, on the ground that the intention

was manifest that it should not be impaired by deficiency of assets in common with other legacies. But, as was said before in this case, mere relationship or dependence is not enough, when the will furnishes no proof of an intention to prefer. 124 Mass. 233.

Upon a careful examination of this will and its several codicils, we are all of opinion that the testator sufficiently manifests an intention that the unconditional legacies to Mrs. French in order of priority should come after the legacies to the son and son's wife. The will gives to the wife of the testator the homestead, and the personal property used with it, for her life, and then to the son for life, and after his death to the son's wife for the life of any child of the latter, so long as she shall occupy it. An annuity of $12,000 is given to the testator's wife for life, which it is declared by the sixth codicil shall have precedence of all other annuities, and shall not be subject to deduction or contribution. These provisions in favor of the wife are declared to be in lieu of dower. In addition to his interest in the homestead and the personal property belonging with it, the son is given the net income for life of certain Harrison Avenue real estate, after deducting two small annuities, to be applied so far as it is sufficient, in the words of the will, "to cover all the living and expenditures" of the son. By the first clause of the seventh codicil, it is provided that, if the income of the Harrison Avenue property shall not be sufficient to pay the son $4500 annually, then the amount necessary to make it up to that sum shall be taken out of the $12,000 annuity to the wife. It is also provided that, if the son or his wife shall come into the possession of the homestead, the trustees shall out of the general residue pay unto him or her, as the case may be, an annuity of $6000, in addition to what they receive by other provisions of the will, while either is in possession of the estate. Following these provisions in the same codicil is the clause now in question, under which Mrs. French claims priority and equality with the son and son's wife. But when this clause was written, as we have seen, the testator had provided that the wife's annuity should have priority over all else, and that out of that annuity the trustees should pay to the son enough to make his income $4500 a year, with an additional annuity to him or his wife while in possession of the homestead.

It is manifest, from these and other provisions, that the testator intended that the homestead should remain the place of residence of his widow, and of his son's family, and that his son and his son's wife should have the means to keep up the style of living to which he had been accustomed, and which the case finds was liberal and expensive. The provisions for the son and son's wife have express reference to this cherished purpose, and are not disproportioned to the object he had in view.

A decisive indication of the testator's intent to make the income of his son secure and certain in any event, is found in the provision by which the annuity to his wife, which was to have preference of all else, was made liable to contribute to the son's annuity. If the testator intended, in favor of Mrs. French, to diminish the security he was aiming to provide for his son and and his son's wife, he would have said so in plain terms. He certainly did not intend to deprive his wife of that priority which he had expressly secured to her, and which, unless controlled by the will, she would have at all events by reason of her relinquishment of dower. And the argument is conclusive that, if, by the words used, he did not intend to put his wife, son and son's wife all on an equality with Mrs. French, then he must have intended that she should come after them all. The same language which it is claimed puts her on an equality with the son and son's wife, applies with equal force to the wife of the testator. The most reasonable interpretation of the contents of the will and codicils is that the intention was to give Mrs. French preference only over all legatees except those named, and that the excepted legatees were to have preference over her.

This construction is aided by the circumstances of near relationship and dependence in which the son and son's wife stood to the testator. He was an only child, who had never engaged in active business, and he and his wife were members of the testator's family, were supported by and were dependent upon him, during his life, and were to succeed to the family mansion after his death. The will contains abundant evidence of his confidence and affection for his son. Most of the provisions in his behalf, and in behalf of his wife, are prominent in the original will, and are carefully drawn. On the other hand, all the legacies to Mrs. French were mere bounties. She was a sister of

his wife, with a husband living, and was in no way dependent on the testator. His gifts to her sprung from no sense of duty, no ties of blood, no circumstances of need. Her name is not mentioned in the original will, and the provision for her priority occurs in the seventh codicil. There is no possible motive apparent for a desire on his part to put her in respect to this claim of preference on an equal footing with the members of his own family. *Decree for the petitioners.*

*C. Allen,* for the petitioners.

*E. O. Shepard,* for Mrs. French.