CHARLES BABBIDGE & others *vs.* ELIZABETH VITTUM
& others.

Essex.   January 27, 1892. — February 25, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Will — Priority of Legacies.*

A testator, by the first five articles of his will, made specific bequests and devises
to his two minor children, including the homestead estate, which was an expen-
sive establishment; by the sixth article he created a trust for the maintenance
and education of his daughter, and by the seventh article a similar trust for his
son; by the eighth article he gave a large sum of money in trust for the addi-
tional benefit of the children, the trust to terminate at a probably distant
period, and the interest of the son to be inalienable, for the declared purpose
of protecting him and his family from want; by the ninth, tenth, eleventh, and
twelfth articles he gave numerous large pecuniary legacies, the largest being to
his brother, his sister, and her children, who were dependent upon him for sup-
port either wholly or mainly, to other near relations, and a few friends, including

one gift which the testator hoped to have applied to purposes not disclosed; and by the thirteenth article he made bequests "out of any property which may then remain"; and by the fourteenth article he gave in trust "all which then remains of the property and estate." There was a deficiency of assets. *Held*, that there was nothing to warrant a presumption that the testator intended to prefer his children, and that the legacies in the sixth to the twelfth article of the will inclusive all abated in equal proportions.

BILL IN EQUITY, filed by the executors and trustees under the will of Thomas Wentworth Peirce, against numerous legatees under the will, including the two minor children of the testator, a son and daughter, and the Attorney General, for instructions as to whether the legacies to the children of the testator are entitled, under the provisions of articles sixth, seventh, and eighth of the will, to priority over all other subsequent legacies and gifts. The case was heard by *Morton*, J., who reported it for the consideration of the full court.

The following are the articles of the will which are in question :

"Sixth. I give to my brother, Andrew Peirce, of Clifton Springs, in the State of New York, my said nephew, Thomas Wentworth Peirce, my friend, Richard S. Spofford, of Newburyport, in said Essex, Charles Babbidge, of Boston, in the county of Suffolk, and James Converse, of Houston, in Texas, one hundred and fifty thousand dollars, in trust safely to invest the same, and to vary investments, make all sales, conveyances, and transfers of the trust property, original and substituted, from time to time, as they deem it expedient, by public or private sale, without the aid of any court, and to invest the proceeds according to their best judgment, to collect the rents and income of the said trust property, original and substituted, and after deducting insurance, taxes, and repairs, and all proper and necessary charges and expenses, including a reasonable compensation for their own services, to pay to the guardians of my said daughter so much of the remaining or net rents and income as they, my trustees, in the exercise of their sound judgment, may deem for her best interest, the same to be applied to her maintenance and education, and the said payments to be made in every year until she attains the age of twenty-one years. To accumulate and add to the capital all the remaining net rents and income, and when my said daughter has attained the age of twenty-one years to

convey in fee simple, transfer, and pay over to her the said prop-
erty and its accumulations. And if my said daughter die before
attaining the said age, then to hold, manage, and dispose of the
same upon the trusts declared in the fourteenth article of this
my will, in relation to the half part of the ultimate residue of
my estate therein devised and bequeathed to them for her ben-
efit, in the event of her dying before attaining the said age.

"Seventh. I give to the trustees before named the further
sum of one hundred thousand dollars, in trust, safely to invest
the same, and to vary investments whenever they deem it expe-
dient, to make all sales, conveyances, and transfers of the trust
property, original and substituted, from time to time, as they
deem it expedient, by public or private sale, without the aid of
any court, and to invest the proceeds according to their best
judgment, to collect the rents and income of the said trust prop-
erty, original and substituted, and to pay to the guardians of my
said son so much of the net rents and income of the said trust
property (such net rents and income being ascertained by mak-
ing the deductions before mentioned) as they, my trustees, in
the exercise of their sound judgment, may deem for his best
interest, the same to be applied to his maintenance and educa-
tion, and the said payments to be made in every year until he
attains the age of twenty-one years. To accumulate and add to
the capital all the remaining net rents and income, and when
my said son has attained the said age, to convey in fee simple,
transfer, and pay over the said trust property to him. And if
my said son die before attaining the said age, to convey in fee
simple, transfer, and pay over the same to his children, then
living, in equal shares, and if he leave no child living at his
death, to hold, manage, and dispose of the same upon the trusts
declared in the fourteenth article of this my will in relation to
the half part of the ultimate residue of my estate therein devised
and bequeathed to them for his benefit, in the event of his dying
before having attained the said age.

"Eighth. I give to my trustees before named one million
dollars, or, at their election, personal property of that value, to
be selected by them from my estate and taken at the value set
upon the same in the appraisement of my estate in the Probate
Court, upon trust safely to invest the same, or if the said legacy,

or any part thereof, is received by them in other property than money, then, in their discretion, to hold the said property invested as they may receive the same, to vary investments whenever they deem it expedient, and make all necessary deeds and conveyances, sales, exchanges, and transfers of the trust property, original and substituted, without the aid of any court, and to invest the proceeds according to their best judgment, to collect the rents and income of the said trust property, and after deducting taxes, insurance, and repairs, and all other necessary and proper charges and expenses, including a reasonable compensation for their own services, to pay to the guardians of each of my said children such part of the remaining or net rents and income as they, my trustees, may deem necessary (if they deem any part necessary), the same to be applied to the maintenance and education of my said children, in addition to the provision hereinbefore made for them, until my elder child attains the age of twenty-one years, or would have attained that age had she lived, and to accumulate and add to the capital all the remaining net rents and income.  My intention is that this trust shall continue during the lives of my two children before named, and of the survivor or longest liver of them, and for twenty-one years next after the death of such survivor.  And from and after the time when my elder child attains the age of twenty-one years, or would have attained that age if living, in trust to pay the said net rents and income quarter-yearly during the continuance of this trust, to my said children, in equal shares, and to the lawful issue, living at the time of payment, of either of my said children who has then died (whether such child have died before or after me), such issue taking by representation and *per stirpes ;* and upon the expiration of the said twenty-one years, to convey in fee simple, transfer, and pay over the said trust property, original and substituted, to my lawful issue then living, they taking *per stirpes.*  And if, at my death, or upon the death of the survivor of my children, or at any time during the twenty-one years next thereafter, all my lawful issue shall be extinct, then to hold and dispose of the same upon the trusts declared in the fourteenth article of this my will, in respect of the ultimate residue of my estate, in the event of my leaving no lawful issue surviving me, or of my lawful issue becoming extinct before the time of dis-

tributing the trust property. Provided always, in relation to the payments of rents and income to my son, that as this trust is created for the declared purpose of protecting my son and his family from exposure to want and inconvenience by reason of the vicissitudes of life, so far as a reasonable foresight may provide, it is hereby expressly declared that the income receivable by him shall not be alienated or disposed of by him, or attached or taken on execution for his debts, and that immediately upon any attempt at such alienation, attachment, or arrest of the said income, which might otherwise be accounted valid in law, my trustees shall, during the continuance of such alienation, attachment, or arrest, hold the amount so attempted to be alienated, attached, or arrested to the use of the children of my son attempting to make such alienation, or against whom such attachment or arrest shall have issued, and if there be no such child, to the use of his wife, if living, and if there be no such child or wife living, to the use of his sister, and, if she have deceased, of her issue, and if there be not then living any such person as is herein designated to receive the said amounts of rents and income, to accumulate and add the same to the capital of the trust property."

Article ninth contained numerous pecuniary legacies.

Articles tenth, eleventh, and twelfth are as follows :

" Tenth. I give to my trustees before named such sum of money, not exceeding twenty thousand dollars, as they may deem necessary to establish upon the line of railroad constructed by me in Texas, now popularly known as the Sunset Route, a charitable hospital for the benefit of such of the employees of the said railroad company as become sick or disabled in the discharge of their duty. I leave the scheme of this charity and its details to my executors, and I empower them, if they deem that my general purpose will be best carried out thereby, to pay over the said money, or any part thereof, to any incorporated hospital which will assume the discharge of this trust.

" Eleventh. I direct my executors to complete the church now in process of construction by me at the said Dover, as a memorial to my father and mother, and to appropriate thereto not exceeding twenty thousand dollars.

" Twelfth. I give to my trustees before named the further

sum of ten thousand dollars, in trust, safely to invest the same, to vary investments whenever they deem it expedient, and to apply the net income of the said trust property in every year until my younger child attains the age of twenty-one years, or would have attained that age, if living, to the assistance and relief of such of my blood relations as may be reasonably deemed to need such aid, taking into consideration their position in life. And if the said net income, or any part thereof, remains unapplied in any year, from want of suitable objects, then in trust to accumulate the same and add it to the capital, with power always, if the reasonable demands of this charity in any future year exceed the net income of that year, to apply thereto the said accumulations. And when my younger child attains the said age, to transfer and pay over to him, as trustee, the said property and its accumulations, to be held by him upon the same trusts, and the income disposed of in the same manner, in every year during his natural life. Upon the death of my said son, occurring after he has attained the age of twenty-one years, the said property and its accumulations shall be disposed of according to his appointment by will, and in default of such appointment, or subject to any partial appointment, I bequeath the same to those of my blood relations, and in the proportions, to whom and in which my personal property would have been distributed by the statutes for the distribution of intestate estates then in force in Massachusetts, if I had died intestate and domiciled in Massachusetts at that time, not leaving a wife surviving me. And if my son die before attaining the said age, then in trust, at the time when he would have attained that age had he lived, to transfer and pay over the same to those of my blood relations, and in the proportions, to whom and in which my personal property would have been distributed by the statutes for the distribution of intestate estates ther in force in Massachusetts, if I had died intestate and domiciled in Massachusetts at that time, not leaving a wife surviving me."

The thirteenth article provided for the payment of certain legacies "out of any property which may then remain," and the fourteenth article gave in trust "all which then remains of the property and estate declared to be disposed of in this my will." The bequests and devises in the earlier articles of the will were

specific. A guardian *ad litem* was appointed for the testator's minor children.

*C. G. Chick*, for the plaintiffs, read the papers in the case.

*W. G. Russell*, for the guardian *ad litem*.

*S. K. Paige* (of New Hampshire), *C. M. Hemenway, & A. H. Latham*, for other defendants.

HOLMES, J. This is a bill for instructions, brought to ascertain whether the legacies in the sixth, seventh, and eighth articles of the will of the late Thomas Wentworth Peirce are entitled to priority over all subsequent legacies and gifts. More narrowly, the question is between the articles just mentioned, and the ninth, tenth, eleventh, and twelfth articles, as the legacies in the thirteenth and fourteenth articles are, respectively, " out of any property which may then remain," and " all which then remains," and are admitted to be postponed. The bequests and devises in the earlier articles of the will are all specific.

The sixth article gives one hundred and fifty thousand dollars in trust, to pay to the guardians of the testator's daughter so much of the net income as the trustees deemed for her best interest, the same to be applied to her maintenance and education; and in trust to add the remaining income to capital, and to pay the property and its accumulations over to the daughter when she has attained the age of twenty-one. The seventh article gives one hundred thousand dollars upon similar trusts for the testator's son. The eighth article gives one million dollars in trust to pay to the guardians of each of said children such part of the net income as the trustees may deem necessary, (if they deem any part necessary,) the same to be applied to the maintenance and education of said children, in addition to the provisions before made for them, until the elder child attains the age of twenty-one, or would have attained it had she lived. The remaining income is to be added to the capital. After the time just mentioned, the whole income is to be divided between the two children or their issue, taking by representation and *per stirpes*, and twenty-one years after the death of the survivor of the two children the principal is to be divided in the same way. The trust for the son is declared to be for the purpose of protecting him and his family from want, and is made inalienable.

The largest gifts in the following articles are to the testator's brother, his sister, and her children, who were dependent upon him for support either wholly or mainly, to other near relations, and a few friends, including one gift of twenty-five thousand dollars free from trust, but which the testator hopes to have applied to purposes not disclosed. The total amount of the gifts in articles ninth, tenth, eleventh, and twelfth is a little over half a million dollars. The gifts in articles sixth, seventh, and eighth, to his children, declared by him to be his only children, amount to a million and a quarter. All the specific gifts are to the children, and attention is called on their behalf to the fact that the homestead estate given in the second article, which the testator plainly expected to have kept up, is an expensive establishment.

In our opinion, there is nothing to warrant a presumption that the testator intended to prefer his children, and it is certain that he did not express any such preference in words. The only doubt is with regard to the income directed to be applied to maintenance and education, in view of the decision in *Towle* v. *Swasey*, 106 Mass. 100. *Richardson* v. *Hall*, 127 Mass. 64, is explained by the reason given on page 68 of the report. In *Towle* v. *Swasey*, a legacy to an adopted son of the income of ten thousand dollars, to be expended by his guardian for his support and education during his minority, was held entitled to priority over ordinary pecuniary legacies, although the gift to him of the principal sum at twenty-one was not. The ground relied on was that the income given was not more than sufficient for the discharge of the natural obligation to which it was devoted, and that the purpose would be defeated if it were liable to abatement, there being no other provision for the adopted son, and it being unlikely under the peculiar circumstances that the widow would do anything for him. The decision shows very plainly that in the present case the capital and so much of the income as is not to be applied to the maintenance and education of the children are not entitled to preference. The will shows that the testator thought it doubtful whether any part of the income of the million dollars would be applied to that purpose. There are specific gifts of considerable value, so that it cannot be said that there is no other provision for the children. True,

the children probably were expected to keep and to enjoy them in kind, but it is to be remembered that the argument we are considering does not go on any expressed or conjectured actual intent of the testator, but simply on a presumption, to prevent the failure to discharge a natural obligation. With reference to this question the value of the other gifts is important. In the same connection, it is important also to remember the largeness of the sums involved, and that it is unlikely that a change of circumstances necessitating an abatement so great as to defeat the performance of the testator's natural duty would take place without a change in his will.

Again, it is probable that the testator regarded himself as performing a natural duty in leaving some of the other legacies, which nevertheless could not be picked out for preference. The language of the Lord Chancellor in *Miller* v. *Huddlestone*, 3 McN. & G. 513, 529, is peculiarly applicable to the present case, and we adopt it as expressing our own views: " Take, for example, the common instance of a legacy of a large sum to a child, and another legacy of a smaller sum to an aged relation, or another legacy of a still smaller sum to a friend in poverty, or to an old servant: by giving priority to the child's legacy the other might lose his or her legacy altogether, and yet in most cases this would be utterly repugnant to what it may fairly be presumed the testator would have intended, had he known that there would have been a deficiency of assets."

We may add that the language of the thirteenth and fourteenth articles, which we have referred to at the outset as postponing those legacies, shows that the testator had the notion of priorities present to his mind, and that his lawyer was capable of expressing the idea. The will would seem to have been drawn by a very experienced draughtsman, who was one of the counsel in *Towle* v. *Swasey*. Finally, the language of the sixth, seventh, and eighth articles not only does not express that the share of income directed to be paid over to the children's guardian is to have priority over that which is to be accumulated, but quite excludes such a notion. We are of opinion that the legacies from the sixth to the twelfth articles of the will inclusive, all abate in equal proportions.

*Decree accordingly.*