William T. Collins, S.
The court has heretofore construed certain portions of the testator’s will (N. Y. L. J., Oct. 17, 1955, p. 7, col. 7). One of the questions presented in the prior proceeding was whether the “ First Trust ” for the widow has a preference in the order of abatement of legacies. The court there held that “ [d] etermination of her right to a preference ought to await clarification of the estate finances and * * * will accordingly be reserved for the accounting proceeding or such time as such proof is available ”. The question thus reserved has been presented in the executors’ intermediate accounting.
The question of abatement of legacies usually arises because the testator left a smaller net estate than he had envisioned. In this case, however, the question comes before the court because the tax consequences are such that virtually none of the property passing outside the will qualified for a marital deduction, with the result that the so-called marital deduction trust created in paragraph sixth would require more than the entire net estate of the testator. The sixth paragraph of the will bequeaths to the trustees “ such portion of my estate, as when added to all other property included in the amount allowed as a marital deduction in the Federal Estate Tax Return of my estate, shall result in an amount equal to one-half (%) of my adjusted gross estate as defined by the Internal Revenue Act in effect at the time of my death.” The widow’s trust is measured, therefore, not by the value of the assets subject to disposition by the will but by the value of the taxable estate of the decedent.
The gross principal received by the executors, including realized capital gains, amounts to $387,949.93. The adjusted gross taxable estate was fixed at $683,467.72. Life insurance policies aggregated almost $375,000. The widow has interests under insurance policies in the total amount of $282,271.66, but her interests are restricted to specified annual payments, with no rights to the corpus. None of the life insurance proceeds qualified for the marital deduction. One half of the adjusted *34 gross estate would be $341,733.86. Gifts that qualified for the marital deduction totalled only $13,522.29, thus fixing the value of the paragraph sixth trust at $328,211.57. The total net estate available for all legacies is estimated at less than $300,000.
Under the terms of the decedent’s will virtually his entire estate is earmarked for the benefit of the widow, either outright or in trust. The other legatees are only three in number : $15,200 is bequeathed to a brother to enable him to pay sums owed by him in connection with the purchase of corporate stock; $1,428.49 is bequeathed to a nephew and $4,358.20 to a niece. None of these legacies is in a stated amount. Bach was ascertainable by reference to extrinsic facts and the precise amount of each has been fixed in the prior proceeding herein. The income of the trust created in paragraph sixth is to be paid to the widow for life, and she has a testamentary power to appoint the principal. All the rest of the estate was directed to be set up in a separate trust for the primary life use of the widow and the ultimate benefit of the son or his issue, but there will be nothing available for that trust.
The widow will receive substantial benefits from the insurance moneys. Though she does not admit all of the executors’ statements in respect of her interest in the policies, she concedes that the policies provide for payment of $1,075 a month for a period of 10 years from the date of the decedent’s death- and $810 a month thereafter. She contends that allocation of estate taxes against the insurance funds will reduce these monthly sums to $785 and $591, respectively. The tax allocation has not yet been definitively settled.
When the assets of an estate prove insufficient to pay all legacies in full, the general rule is that the legacies abate pro rata, unless the will expresses a different intention. There are several exceptions to this general rule (see Matter of Cameron, 278 N. Y. 352, 358), only one of which is urged here, namely, that intent to create a preference may be inferred from the fact that a legacy is given for the maintenance of a near relative who is otherwise unprovided for. The basis for the allowance of such a preference has been stated thus: “ [The testator] naturally expects that all legacies will be paid in full. If this becomes impossible he would desire that wife, children, or other near dependents should obtain the support and means of education necessary for their future and which he supposed he had secured to them before mere gifts to others are paid. ‘ Otherwise provided for, ’ therefore, must mean more than a nominal provision or one the testator would regard as plainly insufficient. It is the testator’s mind we seek to read. Rightly or wrongly *35 did he think their necessities were already adequately supplied? Or did he believe their income must be supplemented by his legacy to accomplish the purpose he had in mind? To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light.” (Matter of Neil, 238 N. Y. 138, 140.) The search for the testator’s intent in this respect is, indeed, a curious one, for we recognize at the start that he believed all of the legacies would be paid and that he had no actual intention in respect of abatement. The question, therefore, is not one of intent in the usual sense. The argument for a preference is “ simply on a presumption, to prevent the failure to discharge a natural obligation. ’ ’ (Babbidge v. Vittum, 156 Mass. 38, 46.) The presumption is somewhat different from the usual canon of construction which is supposed to guide us to the probable intention of the testator, because here we recognize that he had no actual intention in this respect. However, the rule of intended preference is based upon equitable considerations (Scofield v. Adams, 12 Hun 366, 371), but, like the canons of construction, it is not applied without taking into account its conformity to the general testamentary plan of the particular testator. The court simply presumes that a testator who recognized a natural or moral obligation and attempted to discharge that obligation would give preference to the performance of duty over gratuitous gifts to others, and it will apply the presumption only where the terms of the will read against its background would permit such an inference.
It is not suggested that the resources of this testator had materially changed between the making of the will on December 6, 1951 and the time of his death, October 3, 1953. Indeed the widow’s argument is based upon the premise that financial conditions did not materially change. She claims that it was with full knowledge of the insurance policies and their provisions that the decedent drew his will and directed the creation of a trust for her support, and, she argues, there is thus the clearest manifestation of the testator’s belief that the income from insurance ‘1 must be supplemented by his legacy to accomplish the purpose he had in mind ” (Matter of Neil, supra, p. 140). She contends that income from the insurance policies cannot be regarded as bringing her within the category of those “ otherwise provided for,” but must be viewed as only a portion of the provision for her support and one that was not believed by the testator to be sufficient in and of itself.
There can be no doubt that the widow was a primary object of the testator’s concern and that the trusts were intended to *36 provide for her maintenance and support. Undoubtedly the so-called first trust was also intended to minimize estate taxes and that objective apparently influenced the final form of the testamentary plan. It seems to the court, however, that there is no basis in this will for the presumption that the testator wished the first trust to have a preference over all other legacies. The testator’s actual intent in respect of his wife’s maintenance and support is clearly expressed in the ninth paragraph of the will. His plan was to assure his widow of an annual income of $15,000 from the composite group of assets consisting of the insurance proceeds and the two trusts. He therefore directed that if ‘1 the net income from this First Trust, plus any installment payments that may be made from the moneys that may be retained by life insurance companies from life insurance policies on my life for the benefit of my wife on which I or she may exercise the option to permit the money to remain there and earn interest, plus the income from the Second Trust I have hereinafter established for my wife shall not equal at least the sum of Fifteen thousand ($15,000) dollars a year”, the trustees must pay her from the principal of the first trust sufficient money to provide her with at least the stated income. Even accepting the widow’s statements as to the reduction of insurance payments and the abated value of the trust, there will in all events be sufficient to provide for her in the manner explicitly stated by the testator. It is true that principal may be invaded to produce the required sum. The testator recognized the possibility that all of the assets together might be insufficient to produce that amount. He must have appreciated that the insurance benefits represented a very substantial provision for his wife’s support and maintenance. He may not have known just how much of his property would qualify for the marital deduction and how much would fall into the marital deduction trust, but he unquestionably knew that whatever net assets remained over and above the few legacies would fall into either the first trust or the second trust. He regarded both of the trusts together as supplementing the insurance payments. His plan did not require that the trusts be in any specific amount or that they be sufficient to produce income in any particular sum. The testator was content to let both principal and income stand as security for the stated sum, and he was apparently confident that they would be sufficient for that purpose. If we could indulge in speculation concerning his intent, we might reasonably say that the only reason for setting up the first trust separate from the residuary trust and for giving the widow a *37 broad power o'f appointment over it was to reduce the estate taxes, but the result that we have reached requires no such implication of intent to support it.
There is nothing in the will or in the extrinsic facts which have been called to the court’s attention that would justify the court in presuming an intention to prefer the first trust over the three small legacies. Equity and justice requires that the general legacies abate pro rata.
The specific legacies of household and personal effects to the widow are entitled to a preference. (4 Page on Wills, § 1500; Matter of Crouse, 244 N. Y. 400, 403; Taylor v. Dodd, 58 N. Y. 335, 349; Matter of Burr, 175 Misc. 725, 733.)
Other questions have been raised by answers to the petition.
Respondent Carol Gh Nackenson was not cited in the prior proceeding for construction of the will. She is not bound by the decree entered therein and has the right to be heard on the questions affecting the insurance moneys payable to her. For the reasons stated in its prior decision (N. Y. L. J., Oct. 17,1955, p. 7, col. 7) the court overrules her second objection and holds that there being no residuary estate, the direction to pay all taxes therefrom has no application, the provisions of section 124 of the Decedent Estate Law become operative and estate taxes must be equitably prorated against all persons benefited, including insurance beneficiaries. Her third objection raises no issue because abatement is in no way involved in respect of insurance proceeds; the question is merely one of equitable apportionment of taxes. The fourth objection raises no issue in which objectant has any interest. All questions relating to commissions will be reserved for determination upon settlement of the decree.
The respondent New York Life Insurance Company alleges that it paid over the proceeds of all of its policies of insurance in accordance with the terms of the policies and without knowledge of any claims by the estate. This allegation seems to be undisputed. This respondent cannot therefore be held liable for any part of the taxes (Matter of Zahn, 300 N. Y. 1) and the petition should be dismissed as against New York Life Insurance Company.
The respondents Prudential Insurance Company of America and The Travelers Insurance Company properly demand that the claim settlement certificates heretofore issued be surrendered by the persons to whom they were issued so that they can be properly indorsed and modified. The court will so direct. Insofar as the apportionment of estate taxes is concerned, Schedule J of the account shows only the total amount appor *38 tinned against each beneficiary; not the actual apportionment of the tax. Perhaps no definitive allocation can be made until the value of all legacies has been fixed. An amended Schedule J shall be filed, setting forth allocation of the taxes and the amount finally allocated. The court will pass upon the sums allocated against each beneficiary when the amended allocation has been filed.
There remain for determination the contested application for the attorney’s fee, the personal claims of the executor and the claim of the brother that the stipulation of settlement that was heretofore approved, provided for payment of his legacy without reduction. These issues are placed upon my calendar for hearing on the 22d day of May, 1956, at 3:30 p.m.