IN RE ESTATE OF MARIA CARPENTER, Deceased, Appellee, v. ANN MARIA WILEY, Legatee, Appellant.

**Wills:** CONSTRUCTION: GENERAL AND SPECIFIC LEGACIES. A legacy payable
1  out of no particular fund or article belonging to the estate is called a general legacy, and when it can be thus satisfied it is called a specific legacy.

**Same:** PECUNIARY LEGACIES: PAYMENT. Pecuniary legacies are payable
2  from the personal estate after the payment of debts, if no other fund is provided for the payment of debts; and if the remaining personalty is not sufficient to pay the same general legacies of that character abate, in the absence of any other provision for their payment.

**Same.** The devise of a specific sum of money to the children of testatrix,
3  further described as the amount given testatrix by them out of their share of their father's estate and by her invested in her homestead, which was to be sold by the executors, is a specific legacy and should be paid in full from the proceeds of the homestead, regardless of the sufficiency of the estate to pay other general bequests.

**Same:** CODICIL: CONSTRUCTION: INTENT. A will and codicil must be con-
4  strued together and, in the absence of a conflict therein which cannot be reconciled, the codicil will not be held to express the testator's final intent any more than if it was a part of the original will. Thus where the testatrix merely gave a daughter a specific sum of money, which was a general legacy, a codicil giving her an additional sum for life, which standing alone could not be considered as either

specific or substitutional, does not change the character of the bequest. It is the testator's intent which must govern in all cases.

Same: SUBSTITUTED BEQUESTS: CHARACTER OF SAME. Where a specific legacy was revoked by a codicil and the same sum given to another, payable from the same source and as a mere substitution, the latter bequest was also specific and subject to the same incidents and conditions as the original bequest.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

THURSDAY, MAY 14, 1914.

APPLICATION for the construction of a will, in which Ann Maria Wiley, a devisee and legatee, claimed that the testatrix gave her certain specific property, and that thereunder she is entitled to the larger part of the estate. The trial court denied her claim, and she appeals.—*Modified* and *Remanded.*

*Rickel & Dennis,* for appellant.

*Redmond & Stewart,* for appellee.

DEEMER, J.—Maria Carpenter died testate October 10, 1911. On the 10th day of December, 1889, she made a will from which we extract the following:

After all my lawful debts are paid, I give, devise and bequeath all my property, both real and personal, to be divided as follows, to wit: I direct my executor hereinafter mentioned to sell all my real estate and securities, as soon after my death as may be practicable, without unreasonable sacrifice of the proceeds.

First—I give, devise and bequeath to my children, John E. Carpenter, Taylor Carpenter, Delia Diana Carpenter and George P. Carpenter, the sum of seventeen hundred and fifty dollars ($1,750.00) each, this being the amount given me by my said before mentioned children from their share of their father's estate, and by me invested in my homestead on Third avenue.

Second—I further give, devise and bequeath to my children, John F. Carpenter, Taylor Carpenter, Delia Diana Carpenter and George P. Carpenter, the sum of one thousand dollars ($1,000.00) each, except there shall be deducted from the share of Taylor Carpenter, one hundred and seventy-five dollars ($175.00), which sum I have already advanced to him, and except further that I hereby direct that the one thousand dollars ($1,000.00) before mentioned to Delia Diana Carpenter shall be placed in the hands of my executor, or trustees appointed for that purpose, to be kept in their hands for the use of my said daughter, during her life; the income to be paid to her quarterly or semiannually as may seem best to my executor or trustees, and I further give, devise and bequeath to my said daughter Delia Diana Carpenter all the remainder of the proceeds of the sale of my homestead, over the sum of seven thousand dollars ($7,000.00) heretofore divided between John F., Taylor, Delia D. and Geo. P. Carpenter, to be invested by my executor, or trustees appointed for that purpose, as above provided in the case of the one thousand dollars ($1,000.00) for her use during her natural life, and if my daughter Ann Maria Wiley shall take charge of and take care of my daughter Delia Diana Carpenter during her life, then and in that event, the before mentioned one thousand dollars ($1,000.00) and the above mentioned remainder of the homestead proceeds, or so much thereof as shall remain after providing for care of said Delia Diana Carpenter, shall on the death of said Delia Diana Carpenter, descend to and be and become the sole property of my said daughter, Ann Maria Wiley, and my executors or trustees are hereby directed to pay the same over at once to my said daughter, Ann Maria Wiley, in the event contemplated.

To my daughter, Ann Maria Wiley, I give the sum of two thousand dollars ($2,000.00).

To my daughter, Harriet Jane Reed, I give the sum of two thousand dollars ($2,000.00).

To my grandchildren, William Maguire Reed and Theron Carpenter Reed, I give the sum of five hundred dollars ($500.00) each.

. . . All the residue of my property of every kind shall be divided between all my children, share and share alike, or as they may agree. . . .

Later, and on the 14th day of June, 1901, she made a codicil which, so far as material, reads as follows:

First—John F. Carpenter and Delia Diana Carpenter, two of my children named in my said will, having since the date thereof, died unmarried and without issue; therefore all bequests made to them, and all provisions made in said will respecting said bequests, are hereby expressly revoked; I also revoke the bequest of five hundred dollars to each of my two grandchildren, viz., William Maguire and Theron Carpenter Reed, for the reason that I now have two other grandchildren and my circumstances have somewhat changed since the date of signing my said will.

Second—The two bequests of seventeen hundred and fifty dollars each, to my two children John F. Carpenter and Delia Diana Carpenter, being revoked, I hereby give my daughter Ann Maria Wiley the free use and absolute control of thirty-five hundred dollars during the full term of her natural life, or as long as she remains single, and at her death or marriage, I direct that said thirty-five hundred dollars go to my two sons, Taylor Carpenter and George P. Carpenter, equally share and share alike, also the bequest of five hundred dollars to each of my grandchildren being revoked, I give my said daughter, Ann Maria Wiley, the free use and absolute control of one thousand dollars ($1,000.00) during the term of her natural life, or so long as she remains single and unmarried, but upon her marriage, the said one thousand dollars shall go to my daughter, Harriet Jane Reed, my intention being to give my said daughter, Ann Maria Wiley, the free use and absolute control of $4,500.00 during her life or until she marries, in addition to the other provisions made by me for her, and 1 hereby give her further sum of two thousand dollars ($2,000.00) in addition to the amount provided in my said will, the same to be hers absolutely, without conditions or restrictions. My reason for providing for my said daughter more bountifully than any other one child rest in the facts that she is alone in the world, or at least will be when I am gone, and because she has remained faithful to me all her life, ministering to my every want, and because of her faithful devotion to my invalid daughter, Delia Diana Carpenter, until the hour of her death.

Sixth—To Mrs. Maude Carpenter, wife of my son Taylor,

I give the sum of one hundred and seventy-five dollars. This I do in recognition of the valuable services she has rendered me, and for which I do not now feel able to pay her at present in view of my income and expenses.   .   .   .

Testatrix died seised of a lot in the city of Cedar Rapids, which was, and for many years had been, her homestead. She also had the ordinary household goods, $91.78 cash in the bank, and held notes for $1,100 and $205, respectively. The will was duly probated, and an executor appointed, who took charge of the homestead, settled and collected the rents therefrom, paid the expenses incident thereto, from the revenues, and finally, under the order of court, sold the same for $5,300. Testatrix had much more property at the time she made the will and codicil, than she did at the time of her death, and there was not enough remaining at her death to pay all the legacies and devises.

The executor made a report in which he showed that the total amount received by him, including a note for $231.11 of one Geo. P. Carpenter, was $6,997.71, and that his total disbursements were $2,454.63, leaving a balance, including the Carpenter note, of $4,593.81. Among the expenditures were $153.38 advanced to Ann Maria Wiley on account of the legacy to her, and $630 advanced to Taylor Carpenter on account of the legacy to him. The executor asked the approval of his report, and for further directions in the premises.

Taylor, Geo. P., and Maud N. Carpenter appeared and asked that from the money on hand there be paid to Taylor Carpenter and George P. Carpenter the full sum of $1,750, less any payments already made to either, as provided in the first clause of testatrix's will. Ann Maria Wiley appeared and asked a construction of the will. She claimed that under the will and codicil she was entitled to the whole of the estate left by deceased during her natural life, save the two items of $1,000 and $2,000, respectively, in the second division of

the codicil, which two sums were given to her absolutely. She also objected to the payment made to Taylor Carpenter, and asked that the entire amount in the hands of the executor be turned over to her under the provisions of the will and codicil.

Such are the claims for the respective parties, and on this record the trial court ordered the executor to pay to Taylor and George P. Carpenter each the sum of $1,750, less any amounts already paid to them, and the residue to Ann Maria Wiley. The appeal is from this order, and the only questions presented relate to the construction of the will and codicil before quoted.

Appellant contends: (1) That the devises or legacies in the first division of the will are general, and not specific; (2) that the property or the proceeds thereof should be distributed in accord with the terms of the codicil, which at most made all the legacies in the will general; and (3) that, as she was given by substitution the property theretofore given by will to two of testatrix's children, she is at least entitled to the shares that they would have received had there been no codicil.

In *Davis v. Close*, 104 Iowa, 262, we said: "A legacy is said to be general when it is not answered by any particular portion or article belonging to the estate, the delivery of which will alone fulfill the intent of the testator; and, when it can be so answered, it is said to be a specific thing belonging to the estate, which is by the legacy intended to be transferred in specie to the legatee. If it is the intention to have it paid without reference to the fund upon which it is primarily a charge, it is general; but, when it is to be paid out of a particular fund, and not otherwise, it is specific." This definition has ofttimes been repeated, and should be accepted as correct. See *Smith v. McKitterick,* 51 Iowa, 551; *Boston Co. v. Plummer,* 142 Mass. 257 (8 N. E. 51).

1. WILLS : construction : general and specific legacies.

Again it is the rule of this court that: "Pecuniary

legacies are payable out of the general personal estate remaining after the payment of debts; and if, after the debts are paid, the personal property is insufficient to pay money legacies, and no other fund is provided for the payment of debts, the general legacies will have to abate.'' *Henry v. Griffis,* 89 Iowa, 543.

2. SAME: pecu-
niary legacies:
payment.

Taking the original will by its four corners, it seems to us that the devises and legacies provided therein were specific under the rules heretofore quoted. Two statements in the will are quite important in this connection. At one place testatrix said: ''First—I give, devise and bequeath to my children, Taylor Carpenter and George P. Carpenter, the sum of $1,750.00 each, this being the amount given to me by my before mentioned children from their shares of their father's estate, and by me invested in my homestead on Third avenue.'' And at another she said: ''Second—I further give, devise and bequeath to my said daughter, Delia Diana Carpenter, all of the remainder of the proceeds of the sale of my homestead, over the sum of $7,000.00 heretobefore divided between John F., Taylor, Delia D., and Geo. P. Carpenter.'' These, in connection with the other provisions, clearly indicate that it was Mrs. Carpenter's intention, when she made the will, that the homestead should be sold, and that from the proceeds thereof there should be given or returned to the four children named the sum of $1,750 each, and that, if there was any excess, it should be paid to Delia D. Carpenter. The codicil did not revoke the will any farther than the terms thereof were inconsistent and in conflict with the original instrument. By this codicil the provisions for John F. and Delia D. Carpenter were expressly revoked, as also were the bequests to the two grandchildren named. They stood then as if never made, and in lieu thereof the testatrix gave her daughter Ann Maria Wiley, a daughter by a former husband, the use and control of $3,500 during life, or so long as she remained single, and at her death the same was to go to her sons Taylor and Geo. Carpenter. She

3. SAME.

also gave to Ann Maria Wiley the use and control of $1,000 during life, or so long as she remained single, and at her death or upon her marriage this amount was to go to Harriet Jane Reed. She also gave Ann Maria Wiley the sum of $2,000 absolutely, in addition to the amount provided in the original will. Another bequest of $150 was given in the codicil to Maud Carpenter, wife of Taylor.

Having found that the original devises to Taylor F. and Geo. P. Carpenter were specific, and were in no manner revoked by the codicil, and that the greater part, if not all of the funds now in the hands of the executor, came from the specific property, it is apparent, we think, that they are entitled to the full amount of the specific bequests in their favor, less the sums already paid them, unless it also be found that the bequests in favor of Ann Maria Wiley were all or some of them specific, and that the funds now in the hands of the executor should be prorated between the two Carpenters and Ann Maria Wiley, or certain amounts paid them in full in preference to all other devises.

The terms of the codicil itself do not seem to make the bequests to Ann Maria Wiley specific, and it will be noticed that the provision made for her in the original will was not specific. It was a general devise of $2,000. To this there was added by the codicil another $2,000, which was clearly a general devise in addition to the general one theretofore given.

4. SAME: codicil: construction: intent.

The only question which fairly arises is: Are the bequests of $4,500 for life, or any part thereof, specific or substitutional? They are not specific in terms, and if they stood alone, and are not to be considered in connection with the original will, they could not be construed as either specific or substitutional.

But it is fundamental that a will and codicil should be construed together, and, unless there is an irreconcilable conflict or discrepancy between the will and codicil, the latter is no more the last expression of testator's intent than if it had

been written as a part of the original instrument. *Goodwin v. Coddington,* 154 N. Y. 283 (48 N. E. 729); *Jordan v. Woodin,* 93 Iowa, 453; *Rogers v. Rogers,* 49 N. J. Eq. 98 (23 Atl. 125).

The cardinal rule of construction is that the testator's intent, as expressed in the will and codicil, provided it be not contrary to some well-settled rule of law, must govern.

By the original will certain specific devises were made to the four Carpenter children. Two of these died before the death of the testatrix, and, because of these changed conditions and of testatrix's expressed obligations to Ann Maria Wiley, she not only increased the general bequest made for her in the original will, but gave her a life estate or interest in the funds theretofore specifically given to John F. and Delia Diana Carpenter, deceased, with remainder over to the surviving Carpenter children upon the marriage or death of Miss Wiley. That she intended this remainder to be specific, and to be kept on the Carpenter side of the house, we have no doubt; and it just as clearly appears that the life estate to Miss Wiley was intended, with the remainder, to be a substitutional bequest or devise in place of the specific devise to the two deceased Carpenter children, amounting to the sum of $3,500.

*5. SAME: substituted bequest: character of same.*

One of the rules for the construction of a will is that a substituted or additional legacy is *prima facie* payable out of the same funds, and subject to the same incidents and conditions as is the original legacy.

Mr. Redfield states the rule as follows (2 Redf. Wills, *447): "Substitutionary legacies (that is, where legacies are subsequently given to come in the place of others given before, either in a former will, or where the substitutionary legacies are given in a codicil executed at a later date than the instrument by which the legacies were given in the first instance), in all cases such substitutionary legacies, unless there is something in the terms used, or the circumstances attending the substitution to the contrary, will have all the

incidents, conditions, and limitations attaching to the original legacies." Thus, in *Leacroft v. Maynard*, 3 Brown, Ch. 233, the testator gave several legacies, which he directed to be raised out of his real estate, among others, one of £1,000 to a hospital, which, by the statute of mortmain, was void. By a codicil he revoked this legacy, and instead thereof gave £500 to another hospital, without mentioning any source from which it was to be paid. It was contended that, as this legacy was given generally, and without any limitations, it was payable out of the personal estate; but Lord Thurlow held that, as the codicil did not purport to change the fund designated in the will for the payment of legacies, it was void, equally with the original legacy. In *Cooper v. Day*, 3 Mer. 154, the testator, by a codicil, expressly revoked a legacy which in his will he had directed to be paid free of all legacy duty, and gave in lieu thereof a legacy of a greater amount, without any provision respecting the legacy duty. The latter was held to be a substituted legacy, and exempt from legacy duty. The same ruling was made in *Earl of Shaftesbury v. Duke of Marlborough*, 7 Sim. 237; the vice chancellor saying: "When the thing bequeathed by the codicil is given as a mere substitution for that which is bequeathed by the will, it is to be taken with all its accidents." See, also, *Bristow v. Bristow*, 5 Beav. 289; *Fisher v. Brierley*, 30 Beav. 267; *Johnstone v. Earl of Harrowby*, 1 De Gex, F. & J. 183.

The rule is established for the purpose of carrying into effect the intention of the testator, and is employed for that purpose in connection with other rules of construction. Unless it appears from the language used in the codicil, or from the application of recognized rules for the construction of wills, that the testator intended by the codicil to make a substantive and independent bequest, the rule is to be applied. The limitations and conditions which he affixes to the original bequest are presumed to be intended by him to follow it, irrespective of any change in its amount, or in the person to whom it is given. In the absence of some affirmative indica-

tion to the contrary by the language used for the later bequest, it will be deemed merely substitutionary, and subject to all the incidents of that for which it is substituted. See, also, *In re De Laveaga's Estate,* 119 Cal. 651 (51 Pac. 1074).

The bequest of the life estate in $3,500 to Ann Maria Wiley is in the exact amount theretofore given to the deceased Carpenter children. The provision made for them in the original will, which we have found was specific, was revoked, and in lieu thereof the exact amount was given to Ann Maria Wiley for life, and at her death or marriage this exact amount was devised to the surviving Carpenter heirs. Under the rule heretofore quoted, this latter devise was substitutional in character, and had the same incidents as the original devise or bequest; that is to say, it became and was specific in character, and payable out of the proceeds from the sale of the homestead. The other devises to Ann Maria Wiley were general in character and payable out of the general estate, if there was one. As a matter of fact, the money remaining for distribution does not amount to as much as the homestead sold for. The net result is that the amount in the hands of the executor, together with the amounts already paid to Taylor and George P. Carpenter and Ann Maria Wiley, or either of them, including their indebtedness, if any, to the estate, should be brought into hotchpot, and this amount should then be divided into four equal parts, two of which should be paid to or held in trust for Ann Maria Wiley during life, or until she marries, she to have the use and income thereof during this period, and upon her death or marriage the principal sums to go to Taylor and George P. Carpenter, share and share alike, and, in the event of the death of either of them, to his or their heirs per stirpes, and not per capita. The other two shares to be equally divided between Taylor and George P. Carpenter, to be theirs absolutely. The computation to be made by the trial court, so that each shall have an equal share of what remains of the proceeds of the homestead after the payment of the debts and other expenses; an ac-

counting to be had of all that has already been received by any of the parties named.

As our conclusions do not exactly accord with those of the trial court, the decree must be modified in accord with this opinion, and the case will be remanded for that purpose. Each party will pay one-half of the costs of this appeal.— *Modified* and *Remanded.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.